527 S.E.2d 171

**Joan LIPSCOMB, Plaintiff Below, Appellant,**

v.

**TUCKER COUNTY COMMISSION, Defendant Below, Appellee.**

**No. 25847.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 21, 1999.

Decided Dec. 15, 1999.

Jodi K. Douglas, Esquire, John W. Cooper, Esquire, Parsons, for the Appellant.

William M. Miller, Esquire, Parsons, for the Appellee.

McGRAW, Justice:

Joan S. Lipscomb appeals an order of the Circuit Court of Tucker County denying her motion for a new trial. Since 1976, Ms. Lipscomb had worked for the governmental entity in Tucker County responsible for dispatching ambulances. Although that entity changed over time, Ms. Lipscomb maintained essentially the same job throughout her career. In her trial, Ms. Lipscomb sought certain employment benefits. Specifically, she asserted a right to a so-called "service time credit" that was to pay an employee $10 per month (in addition to his or her regular compensation) for every year that an employee had been employed by the appellee, Tucker County Commission (the "Commission"). Although the appellee disagrees, Ms. Lips-

comb maintains that she was at all relevant times an employee of the Commission.[1] Because we agree with Ms. Lipscomb that the lower court committed reversible error, we grant her the relief she requests.

## I.

### FACTUAL BACKGROUND

Although a dispute remains over who was Ms. Lipscomb's "employer" at various times, the record is clear that Ms. Lipscomb first went to work for Tucker County Emergency Medical Services ("Tucker County EMS") in 1976, where she worked full time until sometime in 1983, as a bookkeeper or dispatcher. In 1983, Ms. Lipscomb's job did not change, but the duties of Tucker County EMS were assumed by the newly created Tucker County Ambulance Authority ("Ambulance Authority"). Ms. Lipscomb continued her full time employment with the Ambulance Authority until sometime in 1987, when she reduced the number of hours she worked, becoming a part-time employee.

Ms. Lipscomb continued to work for the Ambulance Authority in a part-time capacity until sometime in 1989, when she returned to full time status. She was still employed, full time, as a dispatcher with the Ambulance Authority at the time of her trial. Throughout these years, she received annually a copy of IRS Form W2, which stated her employer to be the Tucker County Commission.

The instant dispute arose when the Tucker County Wage and Hour Review Board recommended that the Commission adopt the so-called "service time credit," whereby the county would pay its employees $10 per month, in addition to their regular compensation, for every year that an employee had worked for the Commission.[2] The Board made this recommendation in January of 1990, which the Commission subsequently adopted.

Ms. Lipscomb maintains that she should have received this credit for every year she worked from 1976 to the present. She did receive the credit for the years 1989 and later, but the Commission refused to pay her the credit for years worked before 1989, on the basis that she was not actually an employee of the county before that time, or because her reduction from full to part-time rendered her ineligible for the bonus.

After her supervisor denied her the bonus for years prior to 1989, Ms. Lipscomb submitted a grievance to the Wage and Hour Review Board, which also denied her claim. She then sought a review by the Commission, which also found against her, after a hearing conducted on October 12, 1994.

On February 10, 1995, Ms. Lipscomb appealed the Commission's decision to the Circuit Court of Tucker County, and, on the same day, filed a civil suit against the Commission under the Wage Payment and Collection Act, W. Va.Code § 21–5–1 *et seq.* Although the Circuit Court of Tucker County initially dismissed her actions as untimely and barred by the statute of limitations, this Court, in *Lipscomb v. Tucker County Commission,* 197 W.Va. 84, 475 S.E.2d 84 (1996), overturned the lower court, and sent the matter back to Tucker County for trial.

Ms. Lipscomb finally had her trial on January 28 and 29, 1998, wherein the jury found that she was not entitled to the service credit for the years prior to 1989. She moved for a new trial, but by order dated July 28, 1998, the Circuit Court of Tucker County denied that motion and entered judgment on the jury verdict. It is from this order that Ms. Lipscomb now appeals.

Appellant argues that the lower court committed reversible error by denying appellant's motion in limine and by making improper comments to the jury regarding the credibility of a witness. We agree with ap-

---

**1.** The Appellant is no stranger to this Court, as she won her right to a trial in this matter in *Lipscomb v. Tucker County Commission,* 197 W.Va. 84, 475 S.E.2d 84 (1996).

**2.** At some earlier time, the Tucker County Commission had created, pursuant to W. Va.Code

§ 7–1–3dd (1987) the Tucker County Wage and Hour Review Board. This board had the authority to recommend salary adjustments, and to review employee grievances. It has also been called the Tucker County Wage and Benefits Review Board, *see Lipscomb I,* 197 W.Va. at 86, 475 S.E.2d at 86.

pellant that the errors made below entitle her to a new trial.

## II.

## STANDARD OF REVIEW

■ We grant trial court judges wide latitude in conducting the business of their courts. However, this authority does not go unchecked, and a judge may not abuse the discretion granted him or her under our law:

> Ordinarily, when a circuit court is afforded discretion in making a decision, this Court accords great deference to the lower court's determination. However, when we find that the lower court has abused its discretion, we will not hesitate to right the wrong that has been committed.

*Rollyson v. Jordan,* 205 W.Va. 368 379, 518 S.E.2d 372, 383 (1999). *Accord, Gribben v. Kirk,* 195 W.Va. 488, 500, 466 S.E.2d 147, 159 (1995). And this is the standard that we employ when a party challenges the denial of a motion for a new trial:

> We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

*Tennant v. Marion Health Care Foundation,* 194 W.Va. 97, 104, 459 S.E.2d 374, 381 (1995). With the foregoing in mind, we examine the actions of the judge in the case before us.

## III.

## DISCUSSION

### A.

### *Denial of Motion in Limine*

The lower court denied Ms. Lipscomb's motion in limine, with which she had hoped to exclude "any and all statements or evidence pertaining to the Wage and Hour Review Board's policy applying to only continuous years of service." Appellant argues that any such testimony would amount to improper parol evidence because she and the Commission had entered into an employment contract. As proof of the existence of this contract, she points to the language of the Commission's handbook, which provides for the firing of employees upon "reasonable cause."

In her contract argument, appellant relies upon our decisions in *Williams v. Precision Coil, Inc.,* 194 W.Va. 52, 459 S.E.2d 329 (1995), and its forbearer, *Cook v. Heck's Inc.,* 176 W.Va. 368, 342 S.E.2d 453 (1986). As we explained in *Cook,* promises made in employee handbooks may alter the "at will" nature of employment, and create a binding unilateral contract[3]. While we do not disagree with the basis of appellant's contract theory, we need not travel that far along appellant's line of reasoning to reach our conclusion that the trial judge erred when he denied the motion in limine.

■ Whether or not such testimony would constitute improper parol evidence, it was offered so that the jury could construe an ambiguous term in the Commission's wage and hour policy, namely, to whom, exactly, the Commission must grant longevity pay. We ruled recently that any ambiguity in such matters will be decided against the employer, because the employer has great latitude in dictating the terms of employment. As we recognized, with regard to fringe benefits:

> Terms of employment concerning the payment of unused fringe benefits to employees must be express and specific so that

---

**3.** As quoted in *Precision Coil,* we held specifically in *Cook* that:

> 5. A promise of job security contained in an employee handbook distributed by an employer to its employees constitutes an offer for a unilateral contract; and an employee's continuing to work, while under no obligation to do so, constitutes an acceptance and sufficient consideration to make the employer's promise binding and enforceable.

> 6. An employee handbook may form the basis of a unilateral contract if there is a definite promise therein by the employer not to discharge covered employees except for specified reasons.

*Williams v. Precision Coil, Inc.,* 194 W.Va. 52, 63, 459 S.E.2d 329, 340 (1995)(quoting Syllabus Points 5 & 6, *Cook v. Heck's Inc.,* 176 W.Va. 368, 342 S.E.2d 453 (1986)).

employees understand the amount of unused fringe benefit pay, if any, owed to them upon separation from employment. Accordingly, this Court will construe any ambiguity in the terms of employment in favor of employees.

Syl. pt. 6, *Meadows v. Wal–Mart Stores, Inc.*, 207 W.Va. 203, 206–07, 530 S.E.2d 676, 679–80 (1999). Although Ms. Lipscomb does not seek payment for "unused fringe .benefits," the logic in *Meadows* applies to any term or condition of employment. The employer, probably with professional help, has had the opportunity to give each term or condition a specific, carefully chosen, and well-defined meaning.

This case concerns a county employee, but the majority of our employment law jurisprudence concerns private employers. And while we recognize that many West Virginians are employed by small businesses, with varying degrees of legal sophistication, most businesses with a handbook or written wage and hour policy are larger operations. These larger businesses have usually employed major law firms, full of capable and intelligent attorneys with a full command of the Queen's English, as well as schooling in the nuances of our employment law. It is with such professional assistance, often over a lengthy period of time, that these businesses craft carefully their employment policies and handbooks.

The employee, who usually does not have the benefit of professional legal training or advice, merely goes to work under the guidelines of the policy. He or she may receive a thick notebook of regulations, or may merely be told to read a posting, but the employee does not make the rules. As we observed in *Meadows*, "[g]enerally, employers draft the policies which are relied upon by employees." *Meadows v. Wal–Mart Stores, Inc.*, 207 W.Va. 203, 216, 530 S.E.2d 676, 689 (1999). That is why we require employers to be specific in their terms. Thus, we reiterate,

in less limited language, our specific holding from *Meadows:* where an employer prescribes in writing the terms of employment, any ambiguity in those terms shall be construed in favor of the employee. In other words, the employers, who give life to their policies, must also live up to their policies.

We have not lost sight of the fact that the budgetary constraints of many counties do not allow them to hire a team of lawyers to ensure that every employee policy is a model of clarity. Even so, the Tucker County Commission is nonetheless an employer. Appellant introduced at trial evidence that the service time credit was to be applied to "all employees." [4] Without specific language limiting the award to a particular group of employees, the policy is ambiguous, and we must construe it in favor of the appellant. Thus the circuit court erred in allowing testimony regarding the intent of the policy's creators.

## B.

### *The Judge's Comments*

Ms. Lipscomb argues that certain comments made by the judge at trial constituted reversible error in that they prejudiced the jury against her and impermissibly bolstered the credibility of a witness. The comments in question were made by the judge upon the conclusion of the testimony of defense witness Arlie Davis, a Tucker County Commissioner. The judge said:

> I am only going to make one comment. I am only going to make two; maybe I shouldn't, but I am. It is no disservice to be a county commissioner or a public official and he has the privilege of being a county commissioner and he is not a buddy of mine, but I will stand up and fight with him or for him anytime he needs somebody to. These county commissioners, all of them, do the best they can every day just like every other public official does in this courthouse, and there is not a one of them that don't do the best they can every day for the citizens of this county. Now they are not perfect and I am not either, but it

---

4. Appellant introduced at trial the minutes for the January 11, 1990 meeting of the Tucker County Wage and Hour Review Board. In those minutes the board's record keeper states "All employees received credit for years of service at $10.00 additional monthly per year."

is a privilege to work with them and for them and they are only working for Tucker County and nobody else.

Trial Transcript, pages 145–146.

As we have often noted, even in our earliest cases, judges play a special role in the courtroom:

> It has long been recognized that even a slight remark, apparently innocent in its language, may, when uttered by the court, have a decided weight in shaping the opinion of the jury. Vested as he [or she] is with superior authority, disinterested, and possessing experience not available to the ordinary layman, jurors, as a rule, are anxious to catch his view, upon which to found their conclusions. As the jurors should be the triers of the facts, such judicial influence should be studiously guarded against.

*State v. Austin,* 93 W.Va. 704, 714, 117 S.E. 607, 611 (1923).

■■■ In the courtroom, the judge is the locus of the enormous authority of the state. He or she controls the ebb and flow of trial, denies or sustains objections, commands and dismisses witnesses, and even tells the jurors when they are allowed to go to lunch. It is axiomatic that any man or woman one must address as "your Honor" projects a certain *gravitas,* and that words handed down from the bench impart a great impact upon the listening jury. Thus the duty of a judge is clear:

> The judge of the court when engaged in the trial of a case before a jury should studiously abstain from indicating by word, gesture or otherwise his personal views upon the weight of the evidence, or the credibility or incredibility of the witnesses, or the extent of the damages sued for, thereby to invade the province of the jurors, the proper triers of the facts.

Syl. pt. 2, *McDonald v. Beneficial Standard Life Ins. Co.,* 160 W.Va. 396, 235 S.E.2d 367 (1977) (quoting Syl. pt. 1, *Dye v. Rathbone,* 102 W.Va. 386, 135 S.E. 274 (1926)). Thus, we hold that the remarks made by the judge in this case fall beyond the ambit of permissible comments, and constitute reversible error.[5]

## IV.

## CONCLUSION

For the forgoing reasons, we find that the circuit court committed reversible error, and we remand this case for proceedings consistent with this opinion.

Reversed and remanded.

Justice SCOTT did not participate in the decision in this case.

Judge FRED RISOVICH, II, sitting by temporary assignment.

---

5. We do not suggest, however, that the judge's motives were anything but honorable, and echo the words of an earlier Court:

> Knowing the personal qualifications of the trial judge, and being satisfied of his honesty of purpose, we have no intention in our rulings here to cast any unjust aspersions on his conduct in this case. But the orderly conduct of causes on trial, as we have several times had occasion to say, requires that the court should be extremely cautious not to intimate in any manner by word, tone, or demeanor, his opinion upon any fact in issue.

*Dye v. Rathbone,* 102 W.Va. 386, 392, 135 S.E. 274, 277 (1926).