592 S.E.2d 811

Joyce GRESS, individually and as class representative, Plaintiffs Below, Appellees,

v.

PETERSBURG FOODS, LLC formerly known as Advantage Foods, LLC, a West Virginia limited liability company, Defendants Below, Appellants.

and

Perdue Farms, Inc., a Maryland corporation, Defendants Below

and

Joyce Gress, individually and as class representative, Plaintiffs Below, Appellees,

v.

Petersburg Foods, LLC formerly known as Advantage Foods, LLC, a West Virginia limited liability company, Defendants Below

and

Perdue Farms, Inc., a Maryland corporation, Defendants Below, Appellants.

No. 31110, 31111.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 9, 2003.

Decided Nov. 24, 2003.

Dissenting Opinion of Chief Justice Starcher Dec. 9, 2003.

Dissenting Opinion of Justice McGraw Dec. 18, 2003.

Starcher, C.J., dissented in separate opinion.

McGraw, J., dissented in separate opinion.

David M. Hammer, Esq., Robert J. Schiavoni, Esq., Hammer, Ferretti & Schiavoni, Martinsburg, West Virginia, Attorneys for Joyce Gress, et al.

Stephen Godfrey Jory, Esq., Jory & Smith, Elkins, West Virginia, Attorney for Perdue Farms, Inc.

Kevin L. Carr, Esq., Eric E. Kinder, Esq., Spilman, Thomas & Battle, Charleston, West Virginia, Attorneys for Advantage Foods, LLC.

Richard J. Antonelli, Esq., Robert W. Pritchard, Esq., Kenneth C. Kurtz, Esq., Littler Mendelson, Pittsburgh, PA, Pro hac vice for Advantage Food, LLC.

Thomas A. Bright, Esq., Glenn L. Spencer, Esq., Haynsworth, Baldwin, Johnson & Greaves, Greenville, SC, Pro hac vice for Perdue Farms, Inc.

PER CURIAM:

The appellants Petersburg Foods, LLC and Perdue Farms, Inc. appeal from the Grant County Circuit Court's orders granting summary judgment in favor of the appel-

lee Joyce Gress on two separate issues— yield bonus pay and vacation pay.[1] We find that the circuit court erred in granting summary judgment and reverse.

## I.

The appellant Petersburg Foods, LLC owned and operated a chicken processing plant in Petersburg, West Virginia.[2] The appellee Joyce Gress worked at the Petersburg plant from March 21, 1996 through September 18, 1998 when the appellant Petersburg Foods, LLC fired Ms. Gress.[3] In September 1999, Ms. Gress filed a Wage Payment and Collection Act ("WPCA") lawsuit against her former employer alleging two causes of action: (1) a claim for unpaid vacation wages, and (2) a claim for unpaid "yield bonus" pay.

Ms. Gress worked for the appellant approximately two and one-half years. Twice during her employment with the appellant, Ms. Gress took five days of paid vacation. She then worked an additional six months before being fired.

During Ms. Gress' employment at the Petersburg plant, the appellant's written vacation policy provided in its entirety:

1. After one year of service, you are eligible for one week's paid vacation. If you have a leave of absence during your first year, your seniority date will be changed by adding [the] number of days of leave.

2. When an employee has been here for five years, they will have two weeks vacation.

In addition to the appellant's written vacation policy, the appellant's vacation request form stated that "to be eligible for a vacation, you must have been employed as a regular full time employee for one year" and "[y]ou must schedule your vacation on a full week basis ( [for] example = Monday through Friday equal[s] 40 hours)."

Ms. Gress sued the appellants under the WPCA, *W.Va.Code*, 21–5–1 through –18 [1987], alleging, in part, that she was entitled to 2.5 days of vacation pay for the additional six months that Ms. Gress worked between her last vacation and the appellant firing her.

After reviewing the appellant's vacation policy, the circuit court granted summary judgment in favor of Ms. Gress on March 28, 2000. The circuit court found that the vacation policy was not sufficiently clear as to be understood by employees and that Ms. Gress was entitled to 2.5 days of vacation pay for her last six months of employment.

In her second cause of action, Ms. Gress alleged that the appellant owed her a yield bonus for the hours that she worked in September 1998. During Ms. Gress's employment at the chicken processing plant, the appellant had a "yield bonus" policy. The yield bonus increased an employee's hourly rate of pay by an amount ranging from twenty-five cents to seventy-five cents per hour, depending on the past month's rate of productivity as calculated by the appellant. The bonuses were paid on the Friday following the end of each accounting month.

The appellant's written yield bonus policy provided that "to qualify for the bonus, employees must be active on payroll at the time of the distribution." According to the appellant's representatives, to be "active on payroll" meant that an employee had to be present at work and working when the appellant distributed the yield bonus checks. If an employee were out sick or on vacation and was not present when the appellant distributed the yield bonus checks, then the appellant voided that employee's yield bonus check. According to the appellants, the yield bonus policy provided a "means of sharing profits with employees when performance and profitability warrant."

The appellant fired Ms. Gress on September 18, 1998—before the end of the September 1998 yield bonus accounting period. The

---

1. For purposes of consideration, we have consolidated the appellants' separate petitions on appeal.

2. In December of 1998, Petersburg Foods, LLC, formerly known as Advantage Foods, LLC, sold its assets and ongoing business operation to Per-

due Farms, Inc. Perdue Farms, Inc. continued to operate the plant under the name "Advantage Foods."

3. In October of 2002, the Petersburg plant ceased operation.

appellant refused to pay Ms. Gress a yield bonus for days that she worked in September because she was not employed by the appellant on the date that the yield bonuses were distributed.

In its January 4, 2002 order, the circuit court granted Ms. Gress' motion for summary judgment on the yield bonus issue, and ordered the appellants to pay Ms. Gress the yield bonus that she earned for the days she worked in September 1998.

In February of 2002, Perdue Farms, Inc. and Petersburg Foods, LLC filed separate motions to reconsider with the circuit court. Both Petersburg Foods, LLC and Perdue Farms, Inc. requested that the circuit court review its orders granting summary judgment in favor of the appellee on the issues of vacation pay and yield bonus pay.[4] On April 11, 2002, the circuit court denied the appellants' motions to reconsider.

Petersburg Foods, LLC and Perdue Farms, Inc. filed separate appeals to this Court. On February 13, 2003, the Court granted their appeals and consolidated the appeals for purposes of consideration and decision.

## I.

■ The appellants argue that the circuit court improperly granted summary judgment in favor of Ms. Gress on the issues of vacation pay and yield bonus pay. We review a circuit court's entry of summary judgment under a *de novo* standard. "A circuit court's entry of summary judgment is reviewed *de novo*." Syllabus Point 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994).

■ The Wage Payment and Collection Act, *W.Va.Code*, 21–5–1 through –18 [1987], controls the manner in which employees in West Virginia are paid wages. "The West Virginia Wage Payment and Collection Act is remedial legislation designed to protect working people and assist them in the collection of compensation wrongly withheld." *Mullins v. Venable*, 171 W.Va. 92, 94, 297 S.E.2d 866, 869 (1982).

Employers have an obligation to pay employees' wages in a timely manner. When an employer fires an employee, the employer "shall pay the employee's wages in full within seventy-two hours." *W.Va.Code*, 21–5–4(b) [1987].

The Wage Payment and Collection Act defines wages as:

> ... compensation for labor or services rendered by an employee, whether the amount is determined on a time, task, piece, commission or other basis of calculation.... [T]he term "wages" shall also include then accrued fringe benefits capable of calculation and payable directly to an employee: Provided, That nothing herein contained shall require fringe benefits to be calculated contrary to any agreement between an employer and his employees which does not contradict the provisions of this article.

*W.Va.Code*, 21–5–1(c).

Under the WPCA, accrued fringe benefits are wages. The WPCA defines the term "fringe benefit" as:

> ... any benefit provided an employee or group of employees by an employer, or which is required by law, and includes regular vacation, graduated vacation, floating vacation, holidays, sick leave, personal leave, production incentive bonuses, sickness and accident benefits and benefits relating to medical and pension coverage.

*W.Va.Code*, 21–5–1(1) [1987].

■ In Syllabus Point 5 of *Meadows v. Wal–Mart Stores, Inc.*, 207 W.Va. 203, 530 S.E.2d 676 (1999), this Court stated:

> [p]ursuant to W.Va.Code § 21–5–1(c) (1987), whether fringe benefits have then accrued, are capable of calculation and payable directly to an employee so as to be included in the term "wages" are determined by the terms of employment and not by the provisions of W.Va.Code § 21–5–1(c). Further, the terms of employment may condition the vesting of a fringe benefit right on eligibility requirements in addi-

---

**4.** Prior to the circuit court's January 4, 2002 ruling, Petersburg Foods, LLC and Perdue Farms, Inc. had acted as one party, filing only one answer, and one response to other pleadings, etc.

tion to the performance of services, and these terms may provide that unused fringe benefits will not be paid to employees upon separation from employment.

■ In *Meadows,* this Court held that under the WPCA, the terms of the applicable employment policies determine when fringe benefits accrue and whether those benefits must be paid upon termination. "The WPCA does not create a right to fringe benefits. Rather, it reserves the question of fringe benefits to the bargaining process between employers and employees." *Meadows v. Wal–Mart Stores, Inc.,* 207 W.Va. at 216, 530 S.E.2d at 689.

This Court has defined the word "accrued," as used in the WPCA, to mean "vested." According to the *Meadows* Court, "[t]he concept of vesting is concerned with expressly enumerated conditions or requirements all of which must be fulfilled or satisfied before a benefit becomes a presently enforceable right. Because the WPCA contains no such conditions or requirements, the payment of fringe benefits can only be governed by the terms of employment found in employment policies promulgated by employers and agreed to by employees. Accordingly, the terms of the applicable employment policy, and not the WPCA, determine whether fringe benefits are included in the term 'wages' under W.Va.Code § 21–5–1(c)." *Meadows* at 215–216, at 688–689.

At issue is the appellee's right to payment for the fringe benefits of yield bonus pay and vacation pay. We address the yield bonus issue first.

■ Before a fringe benefit is payable to an employee, the fringe benefit must have accrued to the employee. As defined in *Meadows,* the employer's policies define when a fringe benefit accrues to an employee. The terms of the appellant's policy dictated that to qualify for the yield bonus an employee must have been employed by the appellant on the date that the appellant dis-

tributed the yield bonus payments. Ms. Gress was not employed by the appellant on the date that the appellant distributed the yield bonuses; therefore, the yield bonus fringe benefit had not yet accrued to Ms. Gress. Because the yield bonus had not yet accrued to Ms. Gress, we need not decide whether the yield bonus was a fringe benefit "capable of calculation" and payable directly to an employee under the WPCA. Thus, we find that the circuit court erred in granting summary judgment in favor of the appellee on the issue of yield bonus pay.

The appellants also appealed the circuit court's order granting summary judgment in favor of the appellee on the issue of unpaid vacation pay. In ruling for the appellee, the circuit court found that the appellant's vacation policy was ambiguous about whether and how an employee's vacation time would accrue between the first and fifth year of employment. The circuit court further found that the appellant's vacation policy did not speak to what would happen to any unused vacation time at the conclusion of employment with the appellant. Relying on Syllabus Point 6 of *Meadows v. Wal–Mart,*[5] the circuit court construed the silence and ambiguity of the appellant's policy against the appellant and ruled that Ms. Gress was entitled to 2.5 days of vacation based on the six months that she had worked before being fired.

■ The appellants argue that the circuit court erred in granting summary judgment to Ms. Gress because the appellants had a consistently applied unwritten vacation policy. In *Ingram v. City of Princeton,* 208 W.Va. 352, 540 S.E.2d 569 (2000) (*per curiam*), this Court held that a consistently applied *unwritten* employment policy regarding the payment of fringe benefits could support an employer's defense against a WPCA suit when the unwritten policy was known by employees.

---

5. Syllabus Point 6 of *Meadows v. Wal–Mart Stores, Inc.,* 207 W.Va. 203, 530 S.E.2d 676 (1999) states that the:

[t]erms of employment concerning the payment of unused fringe benefits to employees must be express and specific so that employees

understand the amount of unused fringe benefit pay, if any, owed to them upon separation from employment. Accordingly, this Court will construe any ambiguity in the terms of employment in favor of employees.

In the instant case, there is no dispute that the appellant's employees, including Ms. Gress, were aware that the appellant had a practice of only allowing workers to take vacations in five-day increments after each full year of employment with the appellant. Further, Ms. Gress offered no evidence to contradict the appellant's assertion that the appellants had a consistent policy of not paying employees for partial weeks of unused vacation at the time of discharge. When employers have a consistently applied unwritten policy, employers have the protection offered by *Ingram* against a claim under the Wage Payment and Collection Act.

Applying *Ingram* to facts of the case at hand, we find that the circuit court erred in granting summary judgment in favor of Ms. Gress on the vacation pay claim.

### III.

For the above-enumerated reasons, we find that the circuit court erred in granting summary judgment in favor of the appellee on the issues of yield bonus pay and vacation pay. Therefore, we reverse and remand to the circuit court with directions to enter judgment for the appellants.

Reversed with Directions.

Chief Justice STARCHER dissents and reserves the right to file a dissenting opinion.

Justice McGRAW dissents and reserves the right to file a dissenting opinion.

STARCHER, Chief Justice, dissenting:

(Filed Dec. 9, 2003)

I dissent from both of the majority's holdings on the issues of vacation pay and yield bonus pay. As I have stated previously in my dissents in *Ingram v. City of Princeton*, 208 W.Va. 352, 540 S.E.2d 569 (2000) (*per curiam*) and *Howell v. City of Princeton*, 210 W.Va. 735, 559 S.E.2d 424 (2001) (*per curiam*), the Legislature designed the Wage Payment and Collection Act to help working people in the collection of compensation for services rendered. "The West Virginia Wage Payment and Collection Act is remedial legislation designed to protect working people and assist them in the collection of compensation wrongly withheld." *Mullins v. Venable*, 171 W.Va. 92, 94, 297 S.E.2d 866, 869 (1982). Through the WPCA, the "legislature has attempted to prevent employers from abusing their positions by compromising the wages of employees." *Britner v. Medical Security Card, Inc.*, 200 W.Va. 352, 355, 489 S.E.2d 734, 737 (1997) (*per curiam*).

*W.Va.Code*, 21–5–9 [1975] requires that an employer's "employment practices and policies" be "in writing," so as "to spare workers from trying to hit an ever-moving target." *Robertson v. Opequon Motors, Inc.*, 205 W.Va. 560, 566, 519 S.E.2d 843, 849 (1999) (*per curiam*). This Court further held, in Syllabus Point 6 of *Meadows v. Wal–Mart Stores, Inc.*, 207 W.Va. 203, 530 S.E.2d 676 (1999), that we would construe "any ambiguity in the terms of employment in favor of employees."

Yet, in *Ingram*, we created a loophole to allow employers to escape their obligation to document all employment policies and practices in writing. In *Ingram*, the majority created law by holding that when there is an "express" but unwritten understanding between an employee and an employer regarding the payment or nonpayment of unused fringe benefits, then such an understanding is essentially an enforceable contract between the parties and satisfies the requirements of the WPCA. This "express understanding" language is contained nowhere in the WPCA and represents judicial activism at its very best.

The ruling in *Ingram* and its progeny suggests a balancing of interests between employers and employees. Nothing in the WPCA requires such a "goose-gander" rule of fairness. When setting the terms and conditions of employment, employers usually have the upper hand and the WPCA in its undiluted form acknowledges this inequity in power. To have employers comply with the language of the WPCA should be no hardship from which we have to create exceptions.

It is undisputed in the instant case that the appellant's actual policy for vacation days was silent about what would happen to any earned but unused vacation days when an

employee concluded her employment with the appellant and the appellant's policy was also silent as to whether and how vacation days would accrue in years two, three, and four of employment. The silence of the appellant's policy should have been construed against the appellant and the appellee should have been granted 2.5 days of vacation pay.

Applying the "express but unwritten" language of *Ingram* to this case serves to only compound our initial error.

I also dissent to stripping the appellee of her rightfully earned bonus pay.

As quoted in the majority's opinion, "the WPCA does not create a right to fringe benefits. Rather, it reserves the question of fringe benefits to the bargaining process between employers and employees." *Meadows v. Wal–Mart Stores, Inc.*, 207 W.Va. at 216, 530 S.E.2d at 689. The WPCA allows employers to decide when fringe benefits vest, as long as their policies do *"not contradict the provisions of this article."* *W.Va.Code,* 21–5–1 [1987].

Allowing an employer to decide when a fringe benefit accrues without any leavening from the WPCA results in a worker not receiving pay that she earned simply because she was not employed by the appellant on the exact date that the appellant distributed the yield bonus checks. According to the appellant's own representatives, even if an employee had worked an entire month, and is not present, for whatever reason, on the day that the appellant distributes the bonus checks, the employee's check is voided.

I doubt that the Legislature intended the WPCA to allow an employer to void an employee's earned wages simply because that employee is not present when wages are distributed.[1] Such a policy is draconian and medieval and for this Court to approve of such a policy flies in the face of the remedial nature of the Wage Payment and Collection Act.

To argue that the appellant's policy of voiding yield bonus checks is the result of an agreement between the appellant and the appellant's workers defies common sense and what most individuals face in the job market. We do not live in a world of equal bargaining power between employers and employees. Most of us cannot bargain for the terms and conditions of our employment. Instead, most workers have to take their jobs where they can find them and they should not have to work under pre-New Deal conditions.

I therefore dissent to the majority's decision to deny Ms. Gress her hard-earned wages.

McGRAW, Justice, dissenting:

(Filed Dec. 18, 2003)

I must depart from the majority decision because I feel that the company's vacation policy was ambiguous, and, therefore, should have been construed in favor of the employees. The policy in question stated that: "After one year of service, you are eligible for one week's paid vacation." While the company, and the Court, have taken the view that this may state, *sub silencio,* "and in successive years you accrue no vacation at all until you reach another anniversary date," the policy simply doesn't say that. The company could have written the policy that way, but it did not.

The employees argue that the policy should be construed to mean that, employees receive no vacation until they have worked for a full year, after which they get one week of vacation each year, which accrues gradually as the employee works. This is a logical, fair construction of the policy. As this Court has explained: "Where an employer prescribes in writing the terms of employment, any ambiguity in those terms shall be construed in favor of the employee. In other words, the employers, who give life to their policies, must also live up to their policies." *Lipscomb v. Tucker County Comm'n,* 206 W.Va. 627, 631, 527 S.E.2d 171, 175 (1999).

Not only did the lower court correctly follow this Court's holding in *Lipscomb,* but

---

1. According to the appellant's own representatives' deposition testimony, an employee's yield bonus check was voided if the employee were absent for any reason—out sick or on vacation— on the day that yield bonus checks were distributed, even if that employee had worked the entire prior accounting period.

it also made a ruling consistent with common sense and fairness. While the employer has some argument for denying vacation to employees until they have lasted a full year, there is little logic in denying veteran employees the time off they have earned. The company received the benefit of Ms. Gress' labor for two and a half years, yet claims it should only have to give her two years worth of vacation. This is simply unfair to the hard working employees who spend eight hours a day doing the difficult, unpleasant work of cutting up chickens. I doubt that the officers of the company, or their able appellate counsel, would agree to work under a similar policy that deprived them of vacation days fairly earned. Because I believe the lower court's decision was correct, I must respectfully dissent.