DAVIS, Circuit Judge,
concurring in part and dissenting in part:
Unlike the majority, I find that Forest River, Inc. (“FRI”) violated West Virginia law when it paid Gregory one-half of his standard wages for the sole reason that FRI fired him. On this issue alone, I respectfully dissent.
As the majority notes, the West Virginia Wage Payment and Collection Act (“WPCA”) does not regulate the amount of wages and does not establish how or when wages are earned. Maj. Op. at 469. But the WPCA does require employers to pay its employees “in full” for work performed, W.Va.Code § 21-5-4(b), and forbids employers from creating contracts that permit them to pay less than that amount. W.Va.Code § 21-5-10. The applicable provision states:
Except as provided in section thirteen, no provision of this article may in any way be contravened or set aside by private agreement, and the acceptance by an employee of a partial payment of wages shall not constitute a release as to the balance of his claim and any release required as a condition of such payment shall be null and void.
W.Va.Code § 21-5-10 (emphasis added). Thus, under West Virginia law, if Gregory completed his work selling the RVs under contract, FRI cannot change his compensation merely because they fired him. But FRI does exactly that in its Commission Payment Policy (“CPP”). Thus, as applied to the facts in this case, FRI’s CPP policy violates the WPCA.[1]
The majority argues that FRI is entitled to determine how and how much to pay its *471 employees, and clearly, as a general matter, that is true. But FRI’s method of payment is not immune from the WPCA, and the company should not be permitted to use its policy to circumvent the law.
Under the WPCA, if Gregory completed his responsibilities as a salesperson prior to his termination, then Forest River cannot decrease his wages by 50% for any reason, including the reason relied on in this case — that the company fired him. Likewise, if Gregory failed to complete his work, then presumably FRI can compensate him accordingly.[2] See Britner v. Medical Security Card, Inc., 200 W.Va. 352, 489 S.E.2d 734 (1997) (rejecting a challenge to the WPCA from an employer that attempted to contract around W.Va. Code § 21-5-10). It does not matter if this 50% decrease is rooted in malice or based on a written policy, under the WPCA; if the decrease is solely because Gregory was fired, it is illegal.
FRI claims that the 50% decrease was because Gregory did not complete his work on the sales that shipped after his termination. The evidence in the record, however, makes it clear that this is not true because Gregory did fulfill his job responsibilities prior to his termination with respect to his sales. Gregory’s boss, Kevin McArt, testified that Gregory’s responsibilities entailed “[i]n general terms, to close open distribution points and solicit orders.” J.A. 69. McArt further testified that other FRI employees handle tasks subsequent to the actual sale, tasks such as the processing, scheduling, coordinating, shipping, invoicing and delivery of the product. J.A. 80-83, 90-91. The point is further evidenced by the fact that FRI did not pay the remaining 50% of Gregory’s commission to any other salesperson or *472 employee at FRI. Appellee’s Br. at 33-35. Thus, the company earns a windfall when a commission-based employee such as Gregory is terminated. The reality is, at least at FRI, that after the sale is submitted by the salesperson, the salesmen’s job is over.[3]
Thus, under the WPCA Gregory is entitled to his full wages for his work, notwithstanding his former employer’s attempt to contract around the law of West Virginia. As the district court concluded, FRI should have paid him this money “in full.” W.Va.Code § 21-5-4(b). Accordingly, I would affirm the judgment in its entirety.

. FRI argues that the WPCA only precludes agreements under which employees forfeit their statutory right to wages they have earned — and whether the employee has earned the wage or not depends on the employer/employee contract. Appellant's Br. at 37 (citing Meadows v. Wal-Mart Stores, Inc., 207 W.Va. 203, 530 S.E.2d 676, 689 (1999), and Gress v. Petersburg Foods, LLC, 215 W.Va. 32, 592 S.E.2d 811, 815 (2003)). The majority accepts these arguments in part, relying on the same cases. These arguments fail, howev *471 er, because they assume that the relevant contract is valid, and here, the contract is invalid because it violates the WPCA by deducting half of an employee’s compensation merely because an employee has been fired.
The majority reasons that this court must prioritize the employer’s policy over the WPCA, but these cases provide scant support for that approach. Further, both cases address fringe benefits, which are controlled by a different statutory provision from that related to wages. In Meadows, the highest court in West Virginia addressed whether WPCA requires employers to pay employees unused sick leave or vacation pay in the same manner as wages, regardless of the terms of the applicable employment policy, upon separation from employment. The court found that it does not, instead holding that the specific provisions concerning fringe benefits of the applicable employment policy determine whether the fringe benefits at issue are included in the term "wages” under the WPCA. Meadows, 530 S.E.2d at 690.
In Gress, the court held that before a fringe benefit is payable to an employee, it must have accrued and that accrual is defined by the employer's policy. Gress found that a consistently applied unwritten employment policy (that an employee may only take vacation in five-day increments after each full year of employment and that the employer would not pay employees for partial weeks of unused vacation at the time of discharge) could support an employer's defense against a WPCA suit employees knew about the unwritten policy Gress, 592 S.E.2d at 814-15.
Again, these cases are distinguishable because they address fringe benefits, and the WPCA uses different language for fringe benefits and wages. Employers may withhold fringe benefits if they have not "accrued” or “vested,” but they may not do the same with wages. W.Va.Code § 21 — 5—1(c).

. Because we are concerned about whether FRI is failing to compensate its employees for fully-performed work, we do care about whether a salesperson’s duties extend beyond the delivery of the sold product. These subsequent duties simply do not exist. Cf. Maj. Op. at 469 n.3. It appears that the only task required of Gregory after he made a sale was to compare the original order to the confirmation order generated by the corporate office, a de minimus task at best, and one possibly completed by Gregory prior to his termination. J.A. 81-82.

. FRI claims that it pays departing employees only 50% of their compensation because salespeople who leave the company are not present to perform “the many duties associated with seeing a sale through to shipment.” Appellant's Br. at 33. This argument, however, is conclusively refuted by McArl's testimony. Moreover, FRI failed to identify any of these "many duties” in its brief or at oral argument. Lawyer argument should not be accepted as a substitute for probative evidence.