709 S.E.2d 723

**Stanley STEVENSON, II, Plaintiff
Below, Appellee**

v.

**INDEPENDENCE COAL COMPANY,
INC., a West Virginia Corporation,
Defendant Below, Appellant.**

**No. 35592.**

Supreme Court of Appeals of
West Virginia.

Submitted March 29, 2011.

Decided April 28, 2011.

Mark A. Atkinson, Esq., John J. Polak, Esq., Atkinson & Polak, PLLC, Charleston, WV, Harry M. Hatfield, Esq., Matthew M. Hatfield, Esq., Hatfield & Hatfield, PLLC, Madison, WV, for Appellee.

A.L. Emch, Esq., Gretchen M. Callas, Esq., Amber L. Hoback, Esq., Jackson Kelly, PLLC, Charleston, WV, for Appellant.

PER CURIAM:

This action is before this Court upon the appeal of Independence Coal Company, Inc., (hereinafter "Independence") from two orders of the Circuit Court of Boone County entered on September 22, 2009, denying Independence's renewed motion for judgment as a matter of law or, in the alternative, for a new trial. The orders were entered follow-

ing a jury verdict finding Independence negligent and awarding the plaintiff, Stanley Stevenson (hereinafter "Stevenson"), $1,968,952.61 in compensatory damages for an injury to his wrist and arm. The injury occurred while Stevenson, an underground coal miner employed by Spartan Mining Company, was working by assignment at Independence's Justice No. 1 Mine in Boone County.

Although a number of assignments of error are set forth, Independence's principal contention is that Stevenson failed as a matter of law to show that any negligence committed by Independence proximately caused the injury to Stevenson's wrist and arm. Stevenson, however, contends that the circuit court ruled correctly in submitting the issue of proximate cause to the jury. By cross-assignment of error, Stevenson asserts that the jury should have been allowed to consider punitive damages.

■ The record is voluminous and includes numerous documents and exhibits filed at the summary judgment stage of the proceedings as well as the transcript of the thirteen-day trial. Upon careful review, this Court agrees with the observation of the circuit court that Stevenson's evidence with respect to negligence and proximate cause was marginal. Nevertheless, this Court agrees with the circuit court that the disputed facts regarding the issues of negligence and proximate cause presented a jury question. "It is not our job to weigh the evidence ... or to disregard stories that seem hard to believe. Those tasks are for the jury." *Hoyle v. Freightliner,* 650 F.3d 321, 2011 WL 1206658 (4th Cir.2011). In this action, under the disputed facts a reasonable jury could have rationally found for the plaintiff. This Court, moreover, finds no merit in Independence's other assignments of error, or in Stevenson's cross-assignment.

As a result, the September 22, 2009 orders of the Circuit Court of Boone County are affirmed. Moreover, this Court affirms the exclusion of punitive damages from consideration by the jury.

## I.

### Factual Background

The Justice No. 1 Mine, near the City of Madison in Boone County, is a large coal mining operation with several miles of track installed underground. Rail-mounted vehicles, known as mantrips, are used to transport personnel, equipment and supplies throughout the mine. The mantrips are owned and maintained by Independence. Stevenson, a beltman employed by Spartan Mining Company, was assigned to work at Independence's mine on an underground conveyor belt system in a remote area known as the Glory Hole. The record indicates that only one track connected the mine portal to the Glory Hole. That main line, which included various dead-end spurs, was subject to curves and changes in elevation. A co-worker of Stevenson testified that a mantrip could reach the Glory Hole from the portal in approximately 40 minutes to one hour.

At 11:00 p.m. on January 30, 2005, Stevenson arrived at the Justice No. 1 Mine to work the third or "hoot owl" shift and performed a pre-operation check on Independence's No. 00 five-man Brookville mantrip. The 00 Brookville mantrip was equipped with three braking systems: (1) hydraulic service brakes, (2) an emergency / parking brake and (3) regenerative brakes. Unlike the first two systems, the regenerative braking system could not bring the mantrip to a complete stop. Its purpose was to dramatically slow the vehicle down, thereby decreasing the stopping distance. Except for an inoperable two-way radio, Stevenson found no problems with the brakes or any other component of the mantrip.

Stevenson began driving the Brookville mantrip down the main line. Riding with Stevenson to their work station were Mickey Hughes, Brian Williamson and Danny Williams. About 10 to 15 minutes into the journey, a loud rattling noise and smell of heat began coming from the mantrip. Hughes indicated at trial that the rattling was so bad that he thought it might tear up the machine if they did not bring the mantrip to a halt. The mantrip was stopped and then driven to an adjoining spur where the problem was determined to be four loose bolts

holding a service brake assembly to a break mount. Hughes, who was a certified electrician, and Stevenson tightened the bolts, and the men continued down the main line. Soon after, Stevenson dropped off Hughes, Williamson and Williams at their work station and continued toward the Glory Hole.

According to Stevenson, about half way to the Glory Hole the mantrip again began making a loud rattling noise and emitting a smell of heat. Stevenson stopped the mantrip on a level area of the main line and secured it with blocks. He then called the dispatcher on the mine landline telephone system and requested the assistance of an electrician or mechanic. The dispatcher told Stevenson that it would be "quite a while." Noticing that the same bolts were loose, Stevenson proceeded to tighten the bolts with wrenches, just as he and Hughes had done minutes before. In the meantime, another mantrip carrying Jeff Davis and William McCloud arrived on the scene. Having worked the second shift, they were leaving on the main line track but were blocked by Stevenson's mantrip. Although neither Davis nor McCloud witnessed the accident, Stevenson was injured at that point when his right wrist was pinned or crushed between the brake assembly and the mantrip frame. Davis immediately came over and pulled the brake assembly away, and Stevenson removed his arm. The evidence was in sharp conflict concerning whether Stevenson slipped and fell and then caught his wrist and arm in the mantrip or whether the brake assembly inexplicably shifted onto Stevenson's wrist while he was tightening the bolts.

Davis and McCloud transferred Stevenson's Brookville mantrip to a nearby spur and transported Stevenson out of the mine. Thereafter, he was taken by ambulance to the Boone Memorial Hospital Emergency Department and diagnosed with an acute strain / sprain of the right wrist. Stevenson is right-handed. His X-rays were normal, and he was released to "light duty" work and directed to seek follow-up care.

Subsequently, Stevenson was diagnosed with a condition in his right arm known as reflex sympathetic dystrophy (RSD), also known as complex regional pain syndrome, a persistent pain and mobility disorder, usually in an extremity, following a local injury. Stevenson's treating physician, Dr. Lilly, testified: "Complex Regional Pain Syndrome is a process that persists long after the nerve injury or the crush has occurred, and it is accompanied by pain, dysfunction, and there is also always the emotional component to the pain[.]" Stevenson was awarded social security disability benefits for RSD and two pre-existing conditions, a left knee injury and migraine headaches. His on-set date for purposes of social security benefits was determined to be January 31, 2005, the date he was injured in the mine. Stevenson never returned to work.[1]

## II.

### Procedural Background

On April 21, 2006, Stevenson filed a complaint in the Circuit Court of Boone County against Independence, and his employer, Spartan Mining Company. The claim against Independence was based on negligence, and the claim against Spartan was a deliberate intent action under *W.Va.Code*, 23–4–2(d)(2)(ii) [2005]. The deliberate intent action was subsequently eliminated upon the granting of summary judgment in favor of Spartan. Stevenson did not appeal that ruling.

The negligence complaint alleged that Independence failed in its duty to make sure that the mantrip Stevenson operated was maintained in a reasonably safe state of repair, with adequate, safe and functioning brakes and that Independence's failure resulted in a severe, permanent and disabling injury to Stevenson. In conjunction with those allegations, the complaint cited *W.Va. Code*, 21–3–1 [1937], which provides in part:

---

1. In addition to whether Stevenson slipped and fell before injuring his arm, the prognosis of his reflex sympathetic dystrophy was also contested. According to Independence, Stevenson's injury was relatively minor, and his RSD diagnosis, as to which exaggeration of pain is an inherent component, is subject to improvement. Stevenson, however, maintained that the injury and resulting RSD rendered his dominant right hand and arm permanently crippled.

Every employer shall furnish employment which shall be reasonably safe for the employees therein engaged and shall furnish and use safety devices and safeguards, and shall adopt and use methods and processes reasonably adequate to render employment and the place of employment safe, and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees[.]

See, syl. pt. 2, *Sanders v. Georgia–Pacific Corp.*, 159 W.Va. 621, 225 S.E.2d 218 (1976) ("The owner or occupier of premises owes to an invitee such as a non-employee workman or an independent contractor the duty of providing him with a reasonably safe place in which to work and has the further duty to exercise ordinary care for the safety of such persons."); Syl. pt. 6, *Kerns v. Slider Augering & Welding, Inc.*, 202 W.Va. 548, 505 S.E.2d 611 (1997).

In addition, the complaint cited *W.Va. Code*, 22A–2–6 [1985] (concerning the safe movement of equipment in underground mines), and *W.Va.Code*, 22A–2–38 [1985] (concerning the safe operation of mantrips in underground mines).[2]

The action proceeded in due course, and in February 2009, Independence filed a motion for summary judgment, alleging, *inter alia*, that Stevenson could not prove that any negligence on the part of Independence proximately caused his wrist and arm injury. The circuit court conducted a hearing on February 19, 2009, at which time the motion was denied. Soon after, Stevenson filed an amended complaint adding a claim for puni-

tive damages against Independence. The trial began on February 26, 2009, and concluded on March 17, 2009. During the trial, the claim for punitive damages was dismissed by the circuit court. As reflected in the special verdict form, the jury found that Independence was 100% negligent, that its negligence proximately caused the accident and that Stevenson is entitled to $1,968,952.61 in compensatory damages. On March 25, 2009, judgment was entered on the verdict.

During the trial, the circuit court denied Independence's motions for judgment as a matter of law. Following the trial, Independence renewed the motions and, in the alternative, moved for a new trial. See, Rule 50(b) of the *West Virginia Rules of Civil Procedure* (providing for the renewal of a motion for judgment as a matter of law after trial and an alternative motion for a new trial). Independence asserted that any proximate cause link to its conduct was broken because Stevenson failed to wait for the assistance of an electrician or mechanic after he stopped, secured the mantrip, and called the dispatcher. On September 22, 2009, however, the circuit court entered two orders, the first denying the renewed motion for judgment and the second denying the alternative motion for a new trial. The first order concluded that the questions of negligence and proximate cause were for the jury to determine:

Several witnesses ... testified that Independence did not have enough qualified electricians who could provide sufficient expertise to keep the mantrips properly repaired and functional. * * * The jury

---

**2.** Though not cited in the complaint, other statutes and regulations in this area of the law include the following: *W.Va.Code*, 22A–2–37(*o*) [1997] ("Locomotives, personnel carriers, mine cars, supply cars, shuttle cars, and all other haulage equipment shall be maintained in a safe operating condition."); *W.Va.Code*, 22A–2–71 [1985] ("No miner shall be required to operate unsafe equipment."); *W.Va.Code*, 22A–2–71a [1987] ("Any miner has the right to refuse to work in an area or under conditions which he believes to be unsafe."); *Code of State Regulations* § 36–18–4.1 ("Mine operators shall maintain equipment in safe operating condition. Equipment operators shall exercise reasonable care in the operation of the equipment entrusted to them and shall promptly report defects known

to them[.]"); *Code of State Regulations* § 36–18–5 (providing for a pre-operation check of various items, including brakes, maintained on self-propelled equipment); 30 *Code of Federal Regulations* § 75.512 (requiring that all electrical equipment be properly maintained); 30 *Code of Federal Regulations* § 75.1403–6(b)(2) (providing that each track-mounted self-propelled personnel carrier be equipped with two separate and independent braking systems properly installed and well maintained); and 30 *Code of Federal Regulations* § 75.1725(a) ("Mobile and stationary machinery and equipment shall be maintained in safe operating condition and machinery or equipment in unsafe condition shall be removed from service immediately.").

could reasonably have concluded that, but for the defendant's failure to provide Stanley Stevenson with a properly functioning mantrip, the plaintiff would not have been forced to attempt to deal with the malfunctioning vehicle and would not have suffered an injury. * * * Evidence was presented that permitted the jury to find that the defendant required the plaintiff to attempt to fix the brakes on the mantrip[.]

Independence appeals to this Court from the two orders entered on September 22, 2009.

## III.

### Standards of Review

Pursuant to Rule 50(a) of the *West Virginia Rules of Civil Procedure*, a judgment as a matter of law may be granted during a trial where there is "no legally sufficient evidentiary basis" for a jury to find in favor of a party on an issue in question. Subsection (b) of the Rule authorizes a renewed motion for judgment after trial and an alternative motion for a new trial. Rule 50(b) states in part: "If, for any reason, the court does not grant a motion for judgment as a matter of law made at the close of all the evidence, the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion." The circuit court completed that process when it entered the orders of September 22, 2009.

 Syllabus points 1 and 2 of *Fredeking v. Tyler*, 224 W.Va. 1, 680 S.E.2d 16 (2009), hold:

1. The appellate standard of review for an order granting or denying a renewed motion for a judgment as a matter of law after trial pursuant to Rule 50(b) of the *West Virginia Rules of Civil Procedure* [1998] is *de novo*.

2. When this Court reviews a trial court's order granting or denying a re-

newed motion for judgment as a matter of law after trial under Rule 50(b) of the *West Virginia Rules of Civil Procedure* [1998] it is not the task of this Court to review the facts to determine how it would have ruled on the evidence presented. Instead, the task is to determine whether the evidence was such that a reasonable trier of fact might have reached the decision below. Thus, when considering a ruling on a renewed motion for judgment as a matter of law after trial, the evidence must be viewed in the light most favorable to the nonmoving party.

*O'Dell v. Stegall*, 226 W.Va. 590, 703 S.E.2d 561, 575 (2010). Moreover, as to new trials, permitted under Rule 59 of the West Virginia Rules of Civil Procedure, the general standard of review is whether the ruling of the circuit court constituted an abuse of discretion, subject to a clearly erroneous standard as to findings of fact and a *de novo* standard as to conclusions of law. *Jones v. Setser*, 224 W.Va. 483, 488, 686 S.E.2d 623, 628 (2009); *Peters v. Rivers Edge Mining, Inc.*, 224 W.Va. 160, 172–73, 680 S.E.2d 791, 803–04 (2009).

## IV.

### Discussion

 The primary focus of Independence before this Court is on the issue of proximate cause. According to Independence, as a result of dust, debris and usage, all of the mantrips, including the No. 00 Brookville mantrip Stevenson operated, were subject to continuing repair and maintenance. In that regard, Independence insists that it had a sufficient number of electricians and mechanics on hand to keep the mantrips in good condition. In fact, brake repairs to Stevenson's Brookville mantrip were completed by the maintenance crew shortly before Stevenson's pre-operation check the night he was injured.[3] In any event, Stevenson had no trouble stopping and securing the mantrip,

---

**3.** Inasmuch as coal miners at the Justice No. 1 Mine were not assigned to particular mantrips, a question arose at trial concerning whether the No. 00 Brookville was, in fact, the mantrip Stevenson operated and attempted to repair on the night in question. However, in three post-injury reports: (1) the Lost Time Accident Alert, (2) the Internal Accident Investigation Report Form and (3) the Mine Safety and Health Administration Mine Accident, Injury and Illness Report, Independence indicated that the mantrip was the No. 00 Brookville.

especially since there was redundancy in the braking systems. The dispatcher did not tell him to attempt a repair, and, instead of waiting for the electrician or mechanic to arrive, Stevenson took it upon himself to tighten the bolts. Stevenson could offer no explanation as to why the brake assembly shifted, as he testified, onto his right wrist. Independence asserts that the injury was fortuitous and unforeseeable.

Consequently, citing the language of Chief Judge Benjamin N. Cardozo in the well-known case of *Palsgraf v. Long Island R. Co.*, 248 N.Y. 339, 341, 162 N.E. 99, 99 (1928), Independence contends that "negligence in the air," of itself, is not actionable. Therefore, since any alleged negligence on the part of Independence was remote to the conduct and injury of Stevenson, no proximate cause as to Independence could be shown. *See*, syl. pt. 4, *Webb v. Sessler*, 135 W.Va. 341, 63 S.E.2d 65 (1950) ("In this jurisdiction there is a clear distinction between the proximate cause of an injury and the condition or occasion of the injury."); syl. pt. 1, *Walton v. Given*, 158 W.Va. 897, 215 S.E.2d 647 (1975) ("The bare fact of an injury standing alone, without supporting evidence as to the cause therefor, is not sufficient to justify an inference of negligence."); *Metro v. Smith*, 146 W.Va. 983, 990, 124 S.E.2d 460, 464 (1962) (The negligence which renders a defendant liable for damages must be a proximate, not a remote, cause of injury.). Thus, Independence argues, as it did during its summary judgment and post-trial motions, that it is entitled to judgment as a matter of law.

The *Palsgraf* case, however, also stands for the proposition that "[t]he risk reasonably to be perceived defines the duty to be obeyed" and that "[t]he range of reasonable apprehension is at times a question for the court, and at times, if varying inferences are possible, a question for the jury." 248 N.Y. at 344, 345, 162 N.E. at 100, 101. As this Court held in syllabus point 5 of *Hatten, Adm. v. Mason Realty Company*, 148 W.Va. 380, 135 S.E.2d 236 (1964): The question of proximate cause is ordinarily for the jury to determine.

In the current matter, a review of the evidence at trial reveals a level of "varying inferences" supportive of the decision of the circuit court to let the questions of Independence's negligence and proximate cause remain with the jury. Viewing the evidence in the light most favorable to Stevenson, as required by *Fredeking, supra*, the jury heard that it was common knowledge at the mine that the mantrips had recurring brake problems and that, occasionally, a brake head would fall off a mantrip while it was in use. In addition, the jury heard that there were not enough electricians and mechanics to service the mantrips and that, at times, regular hourly workers worked on the brake systems.[4] Stevenson testified that prior to the shift during which he was injured he had encountered brake problems with the 00 Brookville mantrip.

Moreover, Stevenson's evidence at trial outlined a dilemma in which he found himself just prior to his injury. After dropping off his co-workers and again hearing the rattling noise and noticing the smell of heat, Stevenson stopped the mantrip on a level area and called the dispatcher. The stopped mantrip was blocking the main line near the midpoint of the lengthy passage between the portal and Stevenson's work station at the Glory Hole. Stevenson testified that he considered moving the mantrip to an adjoining spur but was concerned that, since the spur included a downward slope, the brakes might fail, and the mantrip might strike various conveyor belts below. Jeff Davis whose mantrip was thus blocked from exiting the mine, testified

---

4. During the trial, Jeff Davis testified:

Q. Did you ever hear of non-electricians, other hourly workers working on the braking systems on their mantrips?

A. You'd hear people talk about it: "I had to fix this or fix that. We called for an electrician, and it was going to be an hour, and I just went ahead and fixed it."

Moreover, Rocky Burns, a fire boss at the mine, testified generally:

Q. And you told Stanley that it don't matter where you are—if it's going to take ten minutes, or an hour for somebody to come, don't you be touching something, you don't know what to do, and if you think it's unsafe especially, you just danger it off and leave it, right?

A. I don't know if I would have told him that. If you think that you can't do it, don't do it. But if you think you can fix it, and they can't get to you, you fix it. If it's not electrical.

that he noticed a hot smell coming from Stevenson's brakes. As he had done minutes before with Hughes, a certified electrician, Stevenson then attempted to tighten the loose bolts on the Brookville mantrip, a task he felt competent to do under the circumstances. Stevenson's brief filed in this Court states:

> [T]he mere fact that Stanley Stevenson was able to bring the mantrip to a stop did not mean that the mantrip was properly maintained by the appellant and did not absolve Independence Coal from negligence. The jury in this case could certainly have reasonably concluded that a mantrip with brakes that "rattled," "smelled," "got hot," and "came loose," and that needed to be stopped on the track twice within a short period of time because of those problems, was not safe and was not properly operating. Likewise, the jury in this case could have reasonably concluded that Independence Coal's failure to provide the plaintiff with a safe and properly operating mantrip was the "cause which in actual sequence, unbroken by any independent cause, produced the wrong complained of, without which the wrong would not have occurred." * * * Indeed, the consequences of the breakdown of Stevenson's mantrip on the main line track manifested themselves within minutes when Davis and McCloud came upon the disabled mantrip and were unable to proceed out of the mine.[5]

▇▇▇▇ Certainly, Stevenson may have been negligent himself in what he did. However, the extent of his negligence, if any, was a jury question. In that regard, it is difficult to sustain the proposition that his actions broke the chain of proximate cause as to Independence as a matter of law. Stevenson stopped the mantrip to address an obvious, recurring problem with the vehicle rather than continuing on toward his remote work station heedless of the symptoms. Consequently, neither through its motion for summary judgment nor through its post-trial motion is Independence entitled to judgment as a matter of law on the issues of negligence and proximate cause. When the material facts are disputed, the resolution of the issue is for the jury.[6]

## V.

### Remaining Assignments of Error

Independence's remaining assignments of error concern issues considered by the circuit court and found to be without merit in the second order entered on September 22, 2009. That order denied Independence's alternative motion for a new trial. Each of the issues raised were subject to discretionary rulings by the circuit court. Upon review, this Court concludes that none of the rulings constitute reversible error.

▇▇▇▇ First, Independence contends that error was committed by the circuit court in allowing excessive and irrelevant evidence to go before the jury concerning the following matters: (1) testimony that the two-way radio on the No. 00 Brookville mantrip was inoperable, (2) testimony that, after Stevenson's injury, the employment of fire boss Rocky Burns was terminated and that Burns filed an action alleging that he was fired for making safety complaints and (3) testimony that Independence's investigation of Stevenson's injury was inadequate. In each instance, however, the circuit court determined that the evidence was relevant to whether Independence had provided Stevenson with a reasonably safe place to work. See, W.Va. Code, 21-3-1 [1937], and Sanders v. Georgia–Pacific Corp., supra. With regard to Burns, the circuit court, at trial, confirmed its prior

---

5. It should be noted that Stevenson's evidence during the summary judgment stage of this action suggested that, as he drove the Brookville mantrip on the evening in question, the brakes were "getting weak." In his January 16, 2008 deposition, Stevenson testified:

> Q. Tell me, again, what you observed about the mantrip after you dropped off Mr. Hughes that led you to conclude you needed to stop the mantrip a second time.

> A. The noise and the brakes getting weak and getting hot, the smell.

6. See, Lawrence v. Bridgestone–Firestone, Inc., 963 F.Supp. 685 (N.D.Ill.1997) (motion for summary judgment filed by tire installer based on lack of probable cause denied where the plaintiff injured his hand in attempting to remount a dislodged wheel).

ruling that no reference would be made to the favorable verdict Burns received in his wrongful termination action. As a result, references to Burns' termination and subsequent action were limited.

▇ The controversy over the post-accident investigation was relevant to the assertion of Independence that, until April 2006, when the action was filed, Stevenson maintained that he slipped and fell and, as a result, caught his arm in the mantrip. After April 2006, however, Stevenson insisted that his arm was caught in the mantrip when the brake assembly shifted onto his wrist. Nevertheless, emphasizing that the investigation reports, setting forth the prior version of the accident, were inconsistent with Stevenson's trial testimony, the circuit court stated as follows in denying the motion for a new trial. "Independence repeatedly challenged Mr. Stevenson's version of events. * * * Because of the defendant's own arguments, it was permissible for plaintiff's counsel to attack the investigative reports which outlined the defendant's version as to how the injury occurred."

In that regard, Independence contends that the circuit court committed error in ruling that Independence could not publish Stevenson's April 2006 complaint to the jury. According to Independence, the complaint demonstrated that Stevenson abandoned his slip and fall version of the accident. The complaint was excluded on Stevenson's objection. Nevertheless, Independence was permitted to argue to the jury that Stevenson changed his story when the litigation began. In later denying a new trial, the circuit court concluded that showing the complaint to the jury would have been of questionable probative value.

▇ In addition, Independence asserts that the circuit court committed error in barring the testimony of Charles Keeney, a co-worker at the Justice No. 1 Mine, who would have stated that Stevenson told him the day after the accident that he slipped and fell and then got his wrist caught in the mantrip. The circuit court excluded Keeney because his testimony would have been cumulative and because he had not been placed on the list of witnesses designated to testify at trial. As stated above, Independence was permitted to argue to the jury that Stevenson changed his story when the litigation began.

▇ Finally, Independence assigns as error the barring of Dr. Samer Nasher's testimony relating to discrepancies between certain pharmacy records and his own records of prescriptions issued to Stevenson. Stevenson who suffered from a pre-existing knee injury and migraine headaches had obtained significant amounts of the narcotic Hydrocodone through prescriptions prior to the accident. Although no evidence at trial indicated that Stevenson's use of Hydrocodone caused the accident, Independence hoped that Dr. Nasher's testimony would support a challenge to Stevenson's credibility, show Stevenson's dependency on the narcotic and establish a connection between the dependency and the subjective nature of Stevenson's reflex sympathetic dystrophy. In denying a new trial, however, the circuit court concluded that Dr. Nasher's proposed testimony concerning the discrepancy in the records was speculative and that its probative value would be exceeded by its prejudicial impact. Nevertheless, Independence was allowed to place the issue of Stevenson's dependency before the jury during closing argument.

Upon review, this Court finds the September 22, 2009, order denying the alternative motion for a new trial to be thorough, persuasive and well within the parameters of sound discretion. As stated above, the general standard of review concerning a ruling on a motion for a new trial is whether the circuit court abused its discretion. For additional authority, see *Pipemasters, Inc. v. Putnam County Commission*, 218 W.Va. 512, 517, 625 S.E.2d 274, 279 (2005), and *Price v. Charleston Area Medical Center*, 217 W.Va. 663, 667, 619 S.E.2d 176, 180 (2005). Consequently, the above assignments of error are without merit.[7]

▇ With regard to Stevenson's cross-assignment of error, this Court is of the opinion that the circuit court properly excluded punitive damages from jury consider-

7. Also without merit are Independence's assignments of error concerning jury instructions and

the propriety of Stevenson's closing argument to the jury. Those matters were addressed by the

ation. According to Stevenson, the question of punitive damages should have been given to the jury based on evidence of repeated complaints at the Justice No. 1 Mine about the braking systems on the mantrips. That evidence was mitigated, however, by other evidence that continuing repair and maintenance of the mantrips and their braking systems are an integral part of underground mining. Moreover, Stevenson was unable to explain why the brake assembly shifted, pinning or crushing his wrist between the brake assembly and the vehicle's frame. As the circuit court commented during the trial, although Stevenson's evidence on liability warranted consideration by the jury, it was "not the strongest case for negligence" the court had seen. Accordingly, Stevenson's cross-assignment of error concerning punitive damages is unconvincing. *See*, syl. pt. 19, *Peters v. Rivers Edge Mining, Inc., supra* (indicating that the first determination to be made is whether the conduct of the actor toward another person is egregious enough to warrant an award of punitive damages).

### VI.

### Conclusion

For the reasons set forth above, the September 22, 2009 orders of the Circuit Court of Boone County denying Independence's renewed motion for judgment as a matter of law or, in the alternative, for a new trial, are affirmed. This Court also affirms the exclusion of punitive damages from jury consideration.

Affirmed.

Justice BENJAMIN disqualified.

The Honorable DAVID W. NIBERT, sitting by temporary assignment.

circuit court in denying a new trial, and this Court can find no justification for disturbing the verdict of the jury. On the whole, the instructions were accurate and fair to both sides. *See*, syl. pt. 6, in part, *Tennant v. Marion Health Care Foundation, Inc.*, 194 W.Va. 97, 459 S.E.2d 374 (1995) ("A verdict should not be disturbed based on the formulation of the language of the jury instructions so long as the instructions given as a whole are accurate and fair to both parties."). With regard to closing argument, this Court agrees with the comment of the circuit court following the 13 day trial: "Counsel for both parties were given substantial leeway to vigorously represent their respective clients' interests in the trial of this case."