559 S.E.2d 424

John HOWELL, Sr., John Howell, Jr., and Allen Radford, Plaintiffs Below, Appellants,

v.

The CITY OF PRINCETON, a West Virginia Municipal Corporation, Defendant Below, Appellee,

and

Marshall Vaughn Lytton, II, Plaintiff Below, Appellant,

v.

The City of Princeton, a West Virginia Municipal Corporation, Defendant Below, Appellee,

and

Jeffrey S. Hawks, Plaintiff Below, Appellant,

v.

The City of Princeton, a West Virginia Municipal Corporation, Defendant Below, Appellee.

No. 29332.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 19, 2001.

Decided Oct. 5, 2001.

Concurring and Dissenting Opinion of Justice Starcher Dec. 13, 2001.

R. Thomas Czarnik, Princeton, for Appellants.

Fred F. Holroyd, Holroyd & Yost, Charleston, Phillip P. Ball, Smith & Lilly, Princeton, for the Appellee.

PER CURIAM:

Appellants John Howell, Sr., John Howell, Jr., Allen Radford, Marshall Lytton, and Jeffrey S. Hawks (hereinafter collectively referred to as ("the Officers") appellants/plaintiffs below), seek reversal from an order of the Circuit Court of Mercer County dismissing their complaints against the City of Princeton (hereinafter referred to as ("the City") appellee/defendant below). The Officers allege violations of the West Virginia Wage Payment and Collection Act, W. Va. Code § 21–5–1 et seq. After reviewing the record and listening to the parties' oral arguments, we reverse the circuit court's dismissal order and remand this case for further proceedings consistent with this opinion.

## I.

## FACTUAL AND PROCEDURAL HISTORY

Three separate complaints were filed by the Officers against the City. Those actions were consolidated by the circuit court. However, because separate complaints were filed, we begin by initially reviewing facts of each complaint prior to consolidation.

*A. Complaint by John Howell, Sr., John Howell, Jr., Allen Radford.* The Howells and Mr. Radford were all former employees of the City. Mr. Howell, Sr. and Mr. Radford had been employed as firemen. Mr. Howell, Jr. was employed as a policeman. According to the complaint, Mr. Howell, Sr. terminated his employment on April 2, 1997; Mr. Radford's employment ended June 28, 1997; and

Mr. Howell, Jr. terminated his employment on July 28, 1998.

On February 17, 1999, the Howells and Mr. Radford filed a complaint against the City seeking accumulated sick pay fringe benefits, plus a statutory penalty. The amount sought by Mr. Howell, Sr. was $16,769.76. Mr. Radford sought payment of $7,349.76; Mr. Howell, Jr. sought payment of $4,358.12.

*B. Complaint by Marshall Lytton.* Mr. Lytton was employed by the City as a fireman. Mr. Lytton ended his employment on January 22, 1996. On February 5, 1999, Mr. Lytton filed a complaint against the City also seeking accumulated sick pay fringe benefits and a statutory penalty. Mr. Lytton sought payment in the amount of $9,128.70.

*C. Complaint by Jeffrey S. Hawks.* Mr. Hawks was employed by the City as a director of Parks and Recreations. Mr. Hawks was terminated by the City on August 24, 1999. On April 12, 2000, Mr. Hawks filed a complaint against the City seeking payment for personal leave, sick leave and severance benefits. Mr. Hawks sought payment of these fringe benefits, plus a statutory penalty, in the amount of $4,815.30.

*D. Consolidation and disposition.* The trial court consolidated the complaints and by order entered August 25, 2000, the trial court dismissed the complaints pursuant to the City's motion to dismiss.[1] From this order the Officers now appeal.

## II.

## STANDARD OF REVIEW

The trial court's order of dismissal on August 25, 2000, granted summary judgment to the City. However, the City did not seek summary judgment. In fact, the Officers sought summary judgment, which was denied. The City filed a motion to dismiss under Rule 12(b)(6) of the West Virginia Rules of Civil Procedure with its answer to each of the complaints. The Officers assert

---

1. The trial court initially consolidated the two complaints filed by the Howells, Mr. Radford, and Mr. Lytton. However, it dismissed all three complaints in the August 25, 2000 order. Subse-

quently, the trial court entered a *nunc pro tunc* order on December 22, 2000, formally consolidating Mr. Hawks' complaint with the two other complaints.

in their brief that the trial court did not consider evidence outside the pleadings in rendering its decision. We will, therefore, treat the dismissal as coming under Rule 12(b)(6). *See Murphy v. Smallridge*, 196 W.Va. 35, 36 n. 4, 468 S.E.2d 167, 168 n. 4 (1996) ("In its order, the circuit court suggested it was using summary judgment as the procedural vehicle for the dismissal; however, we find the dismissal should have been premised under Rule 12(b)(6) of the West Virginia Rules of Civil Procedure. We are not bound by the label employed below, and we will treat the dismissal as one made pursuant to Rule 12(b)(6).").

■ We have held that "[a]ppellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo*." Syl. pt. 2, *State ex rel. McGraw v. Scott Runyan Pontiac–Buick, Inc.*, 194 W.Va. 770, 461 S.E.2d 516 (1995). *See also Shaffer v. Charleston Area Med. Ctr., Inc.*, 199 W.Va. 428, 433, 485 S.E.2d 12, 17 (1997) ("Where matters heard on a 12(b)(6) motion do not extend outside the pleading, our standard of review from an order dismissing a claim under Rule 12(b)(6) is *de novo*[.]" (citation omitted)). Moreover, "[a]n appellate court is not limited to the legal grounds relied upon by the circuit court, but it may affirm or reverse a decision on any independently sufficient ground that has adequate support." *Murphy*, 196 W.Va. at 36–37, 468 S.E.2d at 168–69. We have also explained that "[t]he trial court, in appraising the sufficiency of a complaint on a Rule 12(b)(6) motion, should not dismiss the complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Syl. pt. 3, *Chapman v. Kane Transfer Company*, 160 W.Va. 530, 236 S.E.2d 207 (1977). "The policy of the rule is thus to decide cases upon their merits, and if the complaint states a claim upon which relief can be granted under any legal theory, a motion under Rule 12(b)(6) must be denied."

*John W. Lodge Distributing Co., Inc. v. Texaco, Inc.*, 161 W.Va. 603, 605, 245 S.E.2d 157, 158–59 (1978).

## III.

## DISCUSSION

***A. Overview.*** The trial court initially entered an order staying the proceedings, because a similar case involving the Act and the City was pending before this Court. The case was *Ingram v. City of Princeton*, 208 W.Va. 352, 540 S.E.2d 569 (2000). *Ingram* held that there was no ambiguity in the terms of a former police officer's employment with the City. Therefore, the Act could not be used to enforce payment of the officer's unused sick leave. In this case, the trial court relied upon the disposition of *Ingram* as the basis for its order of dismissal.

■ ***B. Payment of Fringe Benefits.*** The Officers alleged in their complaints that the City violated the Act by failing to pay them wages, in the form of accumulated sick leave fringe benefits, after their employment with the City ended.[2] Under W. Va.Code § 21–5–1(c) of the Act, "wages" is defined to "include then accrued fringe benefits capable of calculation and payable directly to an employee[.]" Under W. Va.Code § 21–5–1(1) of the Act, "fringe benefits" is defined to include "regular vacation, graduated vacation, floating vacation, holidays, *sick leave*, personal leave, production incentive bonuses, sickness and accident benefits and benefits relating to medical and pension coverage." (Emphasis added.) Finally, under W. Va. Code §§ 21–5–4(b) and (c) of the Act, the following is stated:

(b) Whenever a person, firm or corporation discharges an employee, such person, firm or corporation shall pay the employee's wages in full within seventy-two hours.

(c) Whenever an employee quits or resigns, the person, firm or corporation shall

---

**2.** Mr. Hawks also sought payment for accumulated personal leave fringe benefits and severance benefits. We need not formally address these claims because of our decision to reverse the dismissal order concerning sick leave. We must point out, however, that Mr. Hawks has alleged that his claims for sick leave, personal leave

fringe benefits and severance benefits are governed by different policies from that of the other parties. To the extent that this assertion is proven, the trial court must consider Mr. Hawks' claims on their own merits, independent of the disposition of the claim by the other parties.

pay the employee's wages no later than the next regular payday, either through the regular pay channels or by mail if requested by the employee, except that if the employee gives at least one pay period's notice of intention to quit the person, firm or corporation shall pay all wages earned by the employee at the time of quitting.

A first impression of the above statutory provisions may seem to indicate that in all instances employers are obligated to pay unused fringe benefits to employees upon their termination. This proposition is not legally correct. Payment of unused fringe benefits was addressed by this Court in *Meadows v. Wal–Mart Stores, Inc.*, 207 W.Va. 203, 530 S.E.2d 676 (1999). *Meadows* held that the Act did not make payment of fringe benefits mandatory, and that the terms and conditions of fringe benefits were controlled by the agreement between the employer and employee. In Syllabus point 5 of *Meadows* we ruled that "the terms of employment may ... provide that unused fringe benefits will not be paid to employees upon separation from employment." It was further stated in Syllabus point 6 of *Meadows* that:

> Terms of employment concerning the payment of unused fringe benefits to employees must be express and specific so that employees understand the amount of unused fringe benefit pay, if any, owed to them upon separation from employment. Accordingly, this Court will construe any ambiguity in the terms of employment in favor of employees.

Thus, under *Meadows*, there must be an "express" understanding between employers and employees regarding the payment or nonpayment of unused fringe benefits in order for the Officers to prevail in this case. That same analysis was enunciated in *Ingram*. In fact, in *Ingram*, the City argued and proved successfully that it has a longstanding unwritten policy of never paying employees unused fringe benefits, including sick leave. More importantly, Mr. Ingram admitted on cross-examination that he was fully aware that the City had an unwritten policy of not paying unused sick leave to separated officers. Under *Meadows* and *Ingram* this unwritten policy would be sufficient to defeat the claim asserted by the Officers, *if* the record clearly illustrated that the Officers were aware of the policy.[3] Insofar as the Officers' claims were disposed of at the pleading stage, there is nothing in the record to show that the Officers were aware of the policy. Without such an affirmative showing, the complaints filed by the Officers stated a cause of action upon which relief may be granted. Therefore, it was error for the trial court to dismiss the complaints at the pleading stage. Instead, like *Ingram*, facts must be developed to determine whether or not the City had an unwritten policy of never paying unused sick leave and, if so, whether or not each officer knew that the City had an unwritten policy of never paying unused sick leave to separated officers.

### IV.

### CONCLUSION

In view of the foregoing, the circuit court's order of dismissal is reversed and this case is remanded for further proceedings consistent with this opinion.

Reversed and Remanded.

STARCHER J., concur in part and dissent in part and files opinion joined by McGRAW, C.J.

STARCHER, Justice, concurring, in part, and dissenting, in part.

(Filed Dec. 13, 2001)

I agree with the majority's decision in the instant case to reverse the circuit court's dismissal order, and to remand the case for further proceedings.

I disagree, however, with the majority opinion's discussion of the law. The majority holds that if there is an "express" understanding between an employee and an employer regarding the payment or nonpayment of unused fringe benefits, that understanding is essentially an enforceable contract between the parties.

---

3. One exception would be the claim by Hawks regarding severance payment, which, as stated in the complaint, would constitute a specific promise by the City to him, not a fringe benefit.

In the instant case, the plaintiff police officers allege they are entitled to be paid for unused sick leave when they terminate their employment—but the defendant city alleges it has an unwritten policy that officers are never paid for unused sick leave. The majority opinion concludes that "this unwritten policy would be sufficient to defeat the claim asserted by the Officers, *if* the record clearly illustrated that the Officers were aware of the policy."

This conclusion is directly contrary to the Wage Payment and Collection Act, because the Act plainly says employer policies regarding pay must be written. The Act specifically says that an employer's sick leave policy must be "in writing," so as "to spare workers from trying to hit an ever-moving target." *Robertson v. Opequon Motors, Inc.,* 205 W.Va. 560, 566, 519 S.E.2d 843, 849 (1999) *(per curiam).* *W.Va.Code,* 21–5–9 [1975] states that:

Every person, firm and corporation shall:
. . .

(3) Make available to his employees in writing or through a posted notice maintained in a place accessible to his employees, employment practices and policies with regard to vacation pay, sick leave, and comparable matters.

It is undisputed in this case that the City of Princeton's policy regarding sick leave—that it never paid sick leave to an employee whose job terminated—was unwritten. That means the policy was in violation of law, and should be unenforceable. Yet the majority suggests that because many police officers knew about the unwritten policy through word of mouth, this breach of the law is excusable.

If we do not hold that the sanction for failing to put an employment policy in writing is that the policy will be unenforceable, then what sanction will an employer face for not complying with the law? The majority opinion does not answer this pressing question, which is plainly raised by the record.

I reiterate my belief, as I stated in my separate opinion in *Ingram v. City of Princeton,* 208 W.Va. 352, 358, 540 S.E.2d 569, 575, (2000) (Starcher, J., concurring in part and dissenting in part), that when the City of Princeton chose to redefine "wages" in its unwritten policy to exclude sick leave from fringe benefits payable to the employee upon termination of their employment, it refused to pay its police officers a fringe benefit for which they worked and that they earned. This refusal to pay the officers the wages they earned through the use of an unwritten policy plainly violates the Act.

I therefore concur with the majority's opinion reversing the circuit court's dismissal order, but I respectfully dissent to the majority's discussion of the law. I am authorized to state that Justice McGraw joins in this separate opinion.