725 S.E.2d 200

Kim WOLFE, in his capacity as Cabell County Sheriff; Cabell County Sheriff's Office; Cabell County Commission; and the Cabell County Civil Service Commission, Defendants Below, Petitioners

v.

Nathaniel ADKINS; Jerri Allred; Tim Blevins; Johnny R. Bowman; John Bowman, II; Dianne Brubaker; Darrell Chapman; John Coburn; Kenneth Glover; Wayne Jarrell; Ruth Jones; Gary Lambert; Ronnie Miller; Bonnie Myers; Steven Rappold; Jerry Ryder; Jeremy Skidmore; Karen Spence; Gregg Stiltner; James Vaught; Elgin Ward; and Kevin White, Plaintiffs Below, Respondents.

No. 101476.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 20, 2011.

Decided Sept. 29, 2011.

Ancil G. Ramey, Esq., Hannah B. Curry, Esq., Steptoe & Johnson, Charleston, WV, William T. Watson, Esq., Huntington, WV, for Petitioners.

Michael S. Bailey, Esq., Gregory L. How-ard, Jr., Esq., Bailey & Howard, Barbours-ville, WV, for Respondents.

KETCHUM, Justice:

This wage payment and collection action is before this Court upon the appeal of Kim Wolfe, in his capacity as Cabell County Sher-iff; the Cabell County Sheriff's Office; the Cabell County Commission; and the Cabell County Civil Service Commission (defendants below, collectively referred to as the "Coun-ty") from the Circuit Court of Cabell Coun-ty's order of June 24, 2010. In the order, the motion of the County for a new trial was denied, and judgment was entered in favor of Nathaniel Adkins, *et al.*, former correctional officers and other former employees of the Cabell County Jail (plaintiffs below, the "jail employees"), in the amount of $406,932.26, representing unpaid, accumulated sick leave, liquidated damages, prejudgment interest, costs and attorney fees.

The jail employees' positions were termi-nated in December 2003 when the Cabell County Jail closed, and its prisoners were transferred to the new Western Regional Jail under the direction of the Regional Jail Au-thority. Although many jail employees ob-tained employment at the new facility, the Regional Jail Authority refused to recognize their accumulated sick leave at the County Jail. The County contends that it should have been granted judgment as a matter of law based on the following written provision of its sick leave policy: "When the services of an employee have been terminated, all sick leave credited shall be cancelled as of the last working day with the department."

For the reasons stated below, this Court is of the opinion that the jail employees' accu-mulated sick leave as of the date they were terminated with the County did not consti-tute unpaid wages to which they were enti-tled within the meaning of the West Virginia Wage Payment and Collection Act, *W.Va. Code*, 21–5–1 [1987] *et seq.* The order of June 24, 2010, is, therefore, reversed, and this action is remanded to the circuit court with directions to enter judgment as a matter of law in favor of the County.

## I.

### Factual Background

Nathaniel Adkins and the 21 other plain-tiffs were employed as correctional officers or in related work at the Cabell County Jail. Along with other employees, they were given three documents, two of which addressed sick leave but none of which mentioned sick leave in the context of termination from em-ployment.

Specifically, the jail employees were given a document entitled Cabell County Jail Poli-cy and Procedure Manual for Correctional Officers. The record does not reflect that

the Manual included any provisions concerning sick leave. However, also distributed to the jail employees was Jail Division General Order 11–2001. General Order 11–2001, effective May 17, 2001, stated as follows with regard to sick leave:

Uniformed members shall be allowed to accumulate eighteen (18) days paid sick leave during each calendar year at the rate of one and one-half (1 ½) days per month. Members are allowed to accumulate from year to year unlimited days of unused sick leave. Each employee must work one (1) hour over and above one-half (½) of the prescribed working hours per month in order to be granted the one and one-half (1½) days per month paid sick leave.

As indicated, neither the Jail Policy and Procedure Manual nor General Order 11–2001 addressed the payment of accumulated or accrued sick leave upon termination from employment.

In addition to those two documents, a memorandum dated February 15, 2002, entitled Memo Log File # 2002–005 was distributed to the jail employees. The memorandum, from Cabell County Jail Correctional Administrator James D. Johnson, stated:

Sick leave policy is guided by WV State Code 7–14B–19C, which states Correctional Officers may accumulate sick leave in accordance with policy established by the County Commission

Attached is the County Commission's sick leave policy which shall be adhered to, as the state law commands.

Included with Memo Log File # 2002–005 was a copy of *W.Va.Code*, 7–14B–19 [1983], section (c) of which states: "Correctional officers may accumulate yearly sick leave in accordance with policy to be established by the county commission." In addition, as brought out at trial, only one page of the Cabell County Employee Personnel Handbook was included with Memo Log File # 2002–005. The Handbook was a separate document from both the Jail Policy and Procedure Manual and General Order 11–2001. The attached page of the Handbook con-

cerned sick leave and provided in relevant part:

Sick leave eligibility is granted each year *to be used for bona fide personal illness absences* during that year or as hereinafter set forth for maternity. Employees accrue sick leave at the rate of one and one-half days per month. The carryover of the sick leave time for bona fide personal illness absences is limited to 30 days; provided, however, for retirement purposes there is unlimited carryover of sick leave time. (emphasis added)

Neither Memo Log File # 2002–005 dated February 15, 2002, nor the attachments thereto addressed the payment of accumulated or accrued sick leave upon an employee's termination from employment.

However, the succeeding page of the Cabell County Employee Personnel Handbook, not attached to Memo Log File # 2002–005, nor otherwise distributed to the jail employees, stated:

When the services of an employee have been terminated, all sick leave credited shall be cancelled as of the last working day with the department. However, accumulated sick leave may be reinstated if a permanent employee is rehired by the Employer within a period of six (6) months from the date of separation.

In December 2003, the jail employees' positions were eliminated upon the closing of the Cabell County Jail. As stipulated by the parties, their last regular payday was no later than December 15, 2003. Although many jail employees obtained employment at the Western Regional Jail, the sick leave they had accumulated with the County was not recognized by their new employer.

As a condition of receiving their final paychecks, the County required the jail employees to sign Compensation Affidavits mandated by *W.Va.Code*, 7–7–10 [1972]. Pursuant to that statute, county employees terminated from their employment must sign an affidavit acknowledging receipt of full compensation. Thus, the Compensation Affidavit each jail employee signed stated that "full compensation" was received for services rendered.[1]

---

1. In 2004, *W.Va.Code*, 7–7–10 [1972], was re- pealed by the West Virginia Legislature. *See,*

Nevertheless, in some instances, the jail employees wrote on their Affidavits that additional monies were due for unpaid overtime, vacation or holiday pay. Unpaid, accumulated sick leave, however, was not mentioned.[2]

## II.

### Procedural Background

On December 10, 2004, the jail employees filed a complaint in the Circuit Court of Cabell County against the Sheriff, *et al.*, under the West Virginia Wage Payment and Collection Act, *W.Va.Code,* 21–5–1 [1987] *et seq.*[3] Seeking payment of the accumulated sick leave, the complaint alleged the number of unpaid, accumulated sick days and the rate of pay for each jail employee. The complaint also alleged that the jail employees were entitled to liquidated damages, prejudgment interest, attorney fees and costs.

As the action proceeded in due course, the parties filed motions and renewed motions for summary judgment. The County emphasized the policy in its Employee Personnel Handbook cancelling accumulated sick leave upon termination of employment and the Compensation Affidavits showing that the jail employees had been fully paid upon the elimination of their positions. The jail employees, on the other hand, emphasized that they were not given and had no knowledge of the sick leave cancellation policy and that they felt pressure under their respective economic conditions, and the upcoming December 2003

holiday season, to sign the Compensation Affidavits in order to receive their last paycheck. All motions for summary judgment were denied by the circuit court.

The trial began on March 8, 2010, and the issues were bifurcated, with the jury to determine liability and the circuit court to determine damages. On March 9, 2010, the first phase of the trial concluded, and the jury returned the following verdict:

1. Did the Defendant employers have a policy, either written or unwritten, applicable to the Plaintiff employees regarding what happened to sick leave benefits upon the termination of their employment? Yes

2. Did the Plaintiff employees know of any such policy, either written or unwritten, regarding what happened to sick leave benefits upon the termination of their employment? No

Following post-verdict hearings conducted on April 2 and May 13, 2010, the circuit court entered the final order of June 24, 2010. Noting that the County's motions for judgment as a matter of law were denied twice during the trial, the order denied the County's subsequent motion for a new trial and entered judgment for the jail employees in the amount of $406,932.26 which consisted, in the aggregate, of $303,654.90 for unpaid, accumulated sick leave, liquidated damages and prejudgment interest, plus $103,277.36 for attorney fees and costs.[4]

---

*W.Va.Code,* 21–5–10 [1975] (Acceptance by an employee of partial payment of wages shall not constitute a release as to the balance of his or her claim.).

2. It should be noted that the jail employees consulted an attorney prior to the receipt of their final paychecks and the signing of the Compensation Affidavits. By letter dated December 5, 2003, the jail employees' attorney requested a hearing before the Cabell County Correctional Officer Civil Service Commission. The attorney stated: "The issue on which we request a hearing is the payment of accrued sick leave benefits to Cabell County Jail employees upon their termination of employment at the Cabell County Jail in mid-December." By response dated December 8, 2003, the President of the Civil Service Commission stated that the issue raised was not a civil service matter and, more appropriately, could be pursued in an action filed under the Wage Payment and Collection Act.

3. In syllabus point 3 of *Beichler v. West Virginia University at Parkersburg,* 226 W.Va. 321, 700 S.E.2d 532 (2010), this Court held: "Pursuant to *W.Va.Code,* 21–5–12(a) (1975), a person whose wages have not been paid in accord with the West Virginia Wage Payment and Collection Act may initiate a claim for the unpaid wages either through the administrative remedies provided under the Act or by filing a complaint for the unpaid wages directly in circuit court."

4. For unpaid, accumulated sick leave, the jail employees were awarded their regular rate of pay times the number of accumulated sick leave days, even if in excess of 30 days. As a point of comparison, the Cabell County Employee Personnel Handbook, quoted above, stated: "The carryover of the sick leave time for bona fide personal illness absences is limited to 30 days; provided, however, for retirement purposes there is unlimited carryover of sick leave time." Although the County objected to any award of

Thereafter, the circuit court stayed the final order of June 24, 2010, and the County filed a petition for appeal.

## III.

### Standards of Review

Pursuant to Rule 50(b) of the *West Virginia Rules of Civil Procedure*, "[i]f, for any reason, the court does not grant a motion for judgment as a matter of law made at the close of all the evidence, the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion." In this action, all matters were finalized and resolved against the County in the final order of June 24, 2010. Upon appeal to this Court, the primary assignment of error raised by the County is a legal one: whether, based on the terms of employment between the County and the jail employees, the circuit court committed error in not entering judgment in favor of the County as a matter of law.

 In that regard, syllabus point 1 of *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995), holds: "Where the issue on appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. pt. 4, *Harrison County Commission v. Harrison County Assessor*, 222 W.Va. 25, 658 S.E.2d 555 (2008); syl. pt. 1, *T & R Trucking v. Maynard*, 221 W.Va. 447, 655 S.E.2d 193 (2007). As to the County's motion for a new trial,

authorized under Rule 59 of the *West Virginia Rules of Civil Procedure*, the standard of review, likewise, includes a *de novo* component, i.e., the inquiry on appeal concerns whether the ruling of the circuit court constituted an abuse of discretion, subject to a clearly erroneous standard as to findings of fact and a *de novo* standard as to conclusions of law. *Jones v. Setser*, 224 W.Va. 483, 488, 686 S.E.2d 623, 628 (2009); *Peters v. Rivers Edge Mining, Inc.*, 224 W.Va. 160, 172–73, 680 S.E.2d 791, 803–04 (2009).

## IV.

### Discussion

 Under the definitions set forth in *W.Va.Code*, 21–5–1 [1987], of the West Virginia Wage Payment and Collection Act, the term "wages" includes accrued fringe benefits. That section, in turn, defines the phrase "fringe benefits" as including sick leave. Specifically, *W.Va.Code*, 21–5–1(c) [1987], states, in part: "[T]he term 'wages' shall also include then accrued fringe benefits capable of calculation and payable directly to an employee: Provided, That nothing herein contained shall require fringe benefits to be calculated contrary to any agreement between an employer and his employees which does not contradict the provisions of this article." *Meadows v. Wal–Mart Stores, Inc.*, 207 W.Va. 203, 530 S.E.2d 676 (1999). Whether a particular fringe benefit is payable to an employee is determined by the terms of employment and not by the provi-

accumulated sick leave in excess of 30 days, the Circuit Court concluded that the objection, made for the first time during post-trial proceedings, was untimely.

The award of liquidated damages was statutory and based on the jail employees' regular rate of pay times 30 days. As *W.Va.Code*, 21–5–4(e) [1975], provides, in part:

If a person, firm or corporation fails to pay an employee wages as required under this section, such person, firm or corporation shall, in addition to the amount due, be liable to the employee for liquidated damages in the amount of wages at his regular rate for each day the employer is in default, until he is paid in full, without rendering any service therefor: Provided, however, That he shall cease to draw such wages thirty days after such default.

In 2006, the West Virginia Legislature amended the statute to provide for treble damages. As

*W.Va.Code*, 21–5–4(e), currently provides in part: "If a person, firm or corporation fails to pay an employee wages as required under this section, such person, firm or corporation shall, in addition to the amount which was unpaid when due, be liable to the employee for three times that unpaid amount as liquidated damages."

Finally, the jail employees were awarded $98,225.00 for attorney fees and $5,052.36 for costs, totalling $103,277.36. *See, W.Va.Code*, 21–5–12(b) [1975], and syl. pt. 3, *Farley v. Zapata Coal Corporation*, 167 W.Va. 630, 281 S.E.2d 238 (1981) (indicating that attorney fees may be awarded but are not mandatory). As *W.Va.Code*, 21–5–12(b) [1975], states in part: "The court in any action brought under this article may, in the event that any judgment is awarded to the plaintiff or plaintiffs, assess costs of the action, including reasonable attorney fees against the defendant."

sions of *W.Va.Code*, 21–5–1(c). *Meadows, supra,* 207 W.Va. at 216, 530 S.E.2d at 689. The "terms of employment" not only include a written employment agreement but also includes the employer's personnel handbook or manual, personnel policy materials, memoranda and documents intended to be used by employers in establishing the benefits of their employees. *See, Younker v. Eastern Associated Coal Corp.,* 214 W.Va. 696, 591 S.E.2d 254 (2003).

The County, asserting that it should have been granted judgment as a matter of law, emphasizes that no representations of any kind were ever made to the jail employees that they would receive monetary compensation for accumulated sick leave upon termination from employment. In fact, in the history of the County no employee had ever been so compensated. The County argues in its petition for appeal:

> Where there is no term of employment, however, as in the instant case, providing for the payment of accumulated sick leave upon an employee's separation of employment, the employee is simply not entitled to such payment. Rather, only where the employer has a written or unwritten policy *providing* such fringe benefits, is the employer obligated to pay the employee upon separation from employment. (emphasis added)

Moreover, according to the County, the jail employees were on constructive notice of, or could have obtained knowledge of, the exact opposite policy as set forth in the Cabell County Employee Personnel Handbook. The Handbook stated: "When the services of an employee have been terminated, all sick leave credited shall be cancelled as of the last working day with the department."

The jail employees, however, contend that the Cabell County Employee Personnel Handbook containing the cancellation policy is irrelevant because, as the jury determined, the jail employees had no knowledge of any policy regarding what happened to unpaid, accumulated sick leave upon termination. The Handbook was never distributed to the employees. Nor was the question of sick leave upon termination addressed in the Jail Policy and Procedure Manual, Jail Division General Order 11–2001 or in Memo Log File # 2002–005, all of which were given to the jail employees. Consequently, relying on *Meadows v. Wal–Mart Stores, Inc., supra,* the jail employees assert that in the absence of a controlling provision *excluding* the payment of accumulated sick leave as a fringe benefit upon termination of employment, and in the absence of communication to the employee of the provision, the employer is obligated under the Wage Payment and Collection Act to pay the benefit.

In *Meadows,* five consolidated wage payment actions were before this Court, three of which involved employee challenges to the nonpayment of unused, accumulated sick leave upon termination or separation from employment. Noting that "the specific provisions concerning fringe benefits of the applicable employment policy" determined whether the unused benefits in question were included in the term "wages" under the Act, this Court affirmed summary judgments for the employer in two of the sick leave actions because, in each instance, the written employment agreement plainly stated that unused, accumulated sick leave would not be paid on separation from employment. Nothing in *Meadows* indicated that the employees had not received, or were unaware, of the provisions concerning sick leave.

The third action in *Meadows,* however, involved a written employment agreement which provided for the payment of unused, accumulated sick leave for illness, disability and retirement but was silent concerning whether such leave would be paid upon termination or separation from employment. *Meadows* confirmed the principle that "the terms of the applicable employment policy, and not the WPCA, determine whether fringe benefits are included in the term 'wages' under W.Va.Code § 21–5–1(c)." 207 W.Va. at 216, 530 S.E.2d at 689. In addition, *Meadows* stated, in the negative, that nothing in the Wage Payment and Collection Act would prevent an employer from providing that unused fringe benefits would not be paid to employees upon separation from employment. 207 W.Va. at 216, 530 S.E.2d at 689. The Court, relying on the negative inference, held that the employer was required to in-

form the employee what he would *not* receive as a term of employment. In affirming judgment in favor of the employee, the opinion noted: "The terms of employment in the instant case do not expressly state that employees who are separated from employment will not receive cumulative sick days not taken during the course of employment." 207 W.Va. at 222–23, 530 S.E.2d at 695–96. Thus, syllabus point 5 of *Meadows* held:

> Pursuant to W.Va.Code § 21–5–1(c) (1987), whether fringe benefits have then accrued, are capable of calculation and payable directly to an employee so as to be included in the term "wages" are determined by the terms of employment and not by the provisions of W.Va.Code § 21–5–1(c). Further, the terms of employment may condition the vesting of a fringe benefit right on eligibility requirements in addition to the performance of services, and these terms may provide that unused fringe benefits will not be paid to employees upon separation from employment.

Justice Davis filed a concurring opinion in *Meadows* expressing the view that the West Virginia Legislature did not intend the Wage Payment and Collection Act to impose upon employers the financial burden of the payment of "nonvested fringe benefits." 207 W.Va. at 227, 530 S.E.2d at 700.

Subsequently, in *Ingram v. City of Princeton,* 208 W.Va. 352, 540 S.E.2d 569 (2000), the City of Princeton appealed from a judgment following a jury trial awarding a former police officer unused, accrued sick leave, liquidated damages, costs and attorney fees. The officer, who had resigned from his employment, filed the action under the Wage Payment and Collection Act and alleged that the City failed to pay him for 99 days of unused, accrued sick leave. The City argued that to be entitled to the unused sick leave, "there had to be an express agreement between the parties that such payment would be made upon separation." 208 W.Va. at 357, 540 S.E.2d at 574. Upon review, this Court concluded that, because the officer knew that the City had an unwritten policy of not paying for unused sick leave when police officers left their employment, the City's motion for judgment as a matter of law should

have been granted. The opinion in *Ingram* states:

> [T]he facts developed during the trial indicated that the City had an unwritten policy of *never paying* unused sick leave to separated police officers. Thus, no ambiguity was shown to [exist] regarding the existence and terms of the unwritten policy. In fact, Mr. Ingram acknowledged during the trial that he was fully aware of the unwritten policy. There was no evidence of *any* police officer ever having been paid unused sick leave upon his/her separation of employment with the City.

208 W.Va. at 357, 540 S.E.2d at 574 (emphasis in the original).

Soon after *Ingram,* this Court again considered unused, accrued sick leave in *Howell v. City of Princeton,* 210 W.Va. 735, 559 S.E.2d 424 (2001). The circumstances in *Howell* also involved the City of Princeton and its unwritten policy of not paying for unused sick leave upon separation from employment. Thus, in *Howell,* consolidated actions seeking unused sick leave under the Wage Payment and Collection Act, filed by City employees who had separated from their employment, were dismissed on the City's motion pursuant to Rule 12(b)(6) of the *West Virginia Rules of Civil Procedure.* Upon appeal, however, this Court reversed and remanded the actions for further proceedings. Noting that the record was unclear concerning whether the employees knew about the unwritten policy, this Court concluded:

> Under *Meadows* and *Ingram* this unwritten policy would be sufficient to defeat the claim asserted by the Officers, *if* the record clearly illustrated that the Officers were aware of the policy. Insofar as the Officers' claims were disposed of at the pleading stage, there is nothing in the record to show that the Officers were aware of the policy. Without such an affirmative showing, the complaints filed by the Officers stated a cause of action upon which relief may be granted. Therefore, it was error for the trial court to dismiss the complaints at the pleading stage.

210 W.Va. at 738, 559 S.E.2d at 427. (emphasis in the original) *See also, Gress v. Peters-*

*burg Foods, LLC,* 215 W.Va. 32, 592 S.E.2d 811 (2003), in which this Court directed that judgment be entered for the employer where the employee, seeking compensation for unused, accumulated vacation time, was aware of the employer's unwritten but consistently applied policy limiting the amount payable for unused vacation time upon separation from employment.

In this action, even without considering the written policy of cancelling accumulated sick leave upon termination, the evidence demonstrates that the jail employees were aware that sick leave could only be used for "bona fide personal illness absences," subject to other provisions in the case of maternity or retirement. That was plainly stated in the attachment to Memo Log File # 2002–005 given to the jail employees. The evidence also demonstrates that no representations of any kind were ever made to the jail employees that they would receive compensation for accumulated sick leave upon termination from employment. During the trial, the testimony revealed that no employee, including jail employees, had ever been paid sick leave benefits upon termination. Thus, although the terms of employment between the County and the jail employees consisted of various documents and memoranda, nothing in the terms of employment provided the benefit the jail employees now seek.

This Court is of the opinion that the absence of the accumulated sick leave benefit in question does not render the terms of employment between the County and the jail employees ambiguous. As stated in *Meadows,* entitlement to that benefit is to be determined by the specifics of the terms of employment rather than by the Wage Payment and Collection Act. Problematic, however, is the language in *Meadows* imposing a burden upon employers to negate a fringe benefit never conferred in the first instance, i.e., the employer must tell the employees what they will *not* receive as fringe benefits. That language is found in *Meadows* in the body of the opinion where it is stated that "the terms of employment in the instant case *do not* expressly state that employees who are separated from employment will *not receive* cumulative sick days not taken during the course of employment" (emphasis added).

In this action, similarly problematic is the following instruction given to the jury: "If you find that the employer *did not have* a controlling policy regarding the payment or nonpayment of sick leave benefits upon separation from employment, *then you must find in favor of the employees.*" (emphasis added) This Court concludes that that instruction, binding in nature, and the comparable language quoted above from *Meadows,* are erroneous as incompatible with fundamental contract law. Specifically, the language in *Meadows,* suggesting that terminated employees are entitled to accumulated sick leave where the terms of employment do not "expressly state" that they will not receive it, constitutes mere *obiter dicta* and is not controlling or persuasive in these circumstances. Consequently, we find merit in the following assertion of the County: "[A]ny entitlement must arise from the employment itself. Indeed, there must be an 'express agreement' between employer and employee that the employee is entitled to payment of a fringe benefit upon separation from employment."

Consequently, this Court holds that where there is no provision in a written employment agreement, personnel handbook, personnel policy materials or employer documents granting employees payment for unused, accumulated sick leave upon termination from employment, the unused, accumulated sick leave, upon termination from employment, is not a vested, nonforfeitable fringe benefit under the West Virginia Wage Payment and Collection Act and is not payable to the employees.

No representations of any kind were ever made to the jail employees that they would receive compensation for accumulated sick leave upon termination from employment. It was never part of the terms of employment. Whether unpaid, accumulated sick leave is payable to an employee upon termination is determined by the terms of employment and not by the provisions of *W.Va.Code,* 21–5–1 [1987]. There were no representations, policies, memoranda or other documents granting the jail employees pay for accumulated sick leave upon termination from employment.

## V.

### Conclusion

This Court is of the opinion that the jail employees' accumulated sick leave as of the date they were terminated from employment with the County was not payable to them as wages within the meaning of the West Virginia Wage Payment and Collection Act, *W.Va. Code,* 21–5–1 [1987] *et seq.* The order of June 24, 2010, is, therefore, reversed, and this action is remanded to the circuit court with directions to enter judgment as a matter of law in favor of the County.[5]

Reversed and Remanded.

Justice DAVIS concurs, in part, and dissents, in part, and reserves the right to file a concurring and dissenting opinion.

DAVIS, Justice, concurring, in part, and dissenting, in part:

The instant proceeding was filed by former employees of the Cabell County Jail seeking payment for the unused sick leave they accrued during their employment. At the end of the trial in this case, the jury concluded that the Cabell County Jail had a policy stating that employees who left their employment with the Jail would not be paid for their unused sick leave. The jury also found, however, that the former employees involved in this case were not aware of such policy. Accordingly, the jury found in favor of the former employees and awarded them damages. The trial court then entered judgment in favor of the former employees and ordered the employer to pay each employee for the total number of unused sick leave days he/she had accrued as of the time of his/her departure from employment as well as statutory liquidated damages. On appeal to this Court, the majority has determined that the jury's verdict should be reversed in its entirety; that this case should be remanded for entry of judgment in favor of the employer; and that a new point of law is needed to achieve this result. In short, the majority has determined that the former employees are entitled to nothing and that this decision

can be reached only through the creation of a new syllabus point. I strongly disagree with this result, and, accordingly, I dissent from the majority's decision in this regard. Nevertheless, I concur in the majority's ultimate conclusion to reverse and remand this case, but only to the extent that I believe that the trial court improperly interpreted and applied the employer's policy in calculating the amount of unpaid sick leave recoverable by each employee.

### A. This Case Should Have Been Decided Based Upon Existing Precedent

In this case, the employer had a definite policy in place explaining that non-retiring employees who leave their employment are not entitled to payment for their unused sick leave. The adoption of such a policy is entirely permissible and is contemplated by this Court's prior holding in Syllabus point 5 of *Meadows v. Wal–Mart Stores, Inc.,* 207 W.Va. 203, 530 S.E.2d 676 (1999):

> Pursuant to W. Va.Code § 21–5–1(c) (1987), whether fringe benefits have then accrued, are capable of calculation and payable directly to an employee so as to be included in the term "wages" are determined *by the terms of employment* and not by the provisions of W. Va.Code § 21–5–1(c). Further, *the terms of employment* may condition the vesting of a fringe benefit right on eligibility requirements in addition to the performance of services, and these terms *may provide that unused fringe benefits will not be paid to employees upon separation from employment.*

(Emphasis added). Despite the existence of a clear, precise, and definite syllabus point that is directly on point with the facts of the case *sub judice,* the majority nevertheless has adopted a new syllabus point that is unnecessary based upon the facts presently before the Court and does not comport with the doctrine of *stare decisis.* The majority's new syllabus point states, in full:

> Where there is no provision in a written employment agreement, personnel handbook, personnel policy materials or em-

5. In view of the result in this appeal, it is not necessary to address the County's additional as-

signments of error.

ployer documents granting employees payment for unused, accumulated sick leave upon termination from employment, the unused, accumulated sick leave, upon termination from employment, is not a vested, nonforfeitable fringe benefit under the West Virginia Wage Payment and Collection Act and is not payable to the employees.

This "new" statement of law does not resolve an issue that is new or factually distinguishable from those previously addressed by *Meadows*. Thus, the decision of this case should have been based upon *Meadows*, which is the controlling authority for the issues presently before the Court.

**1. Unnecessary as factually inaccurate.** As this Court previously has recognized, *new* syllabus points are created to announce *new* points of law. In this regard, we specifically have held that "[t]his Court will use signed opinions when *new* points of law are announced and those points will be articulated through syllabus points as required by our state constitution." Syl. pt. 2, *Walker v. Doe*, 210 W.Va. 490, 558 S.E.2d 290 (2001) (emphasis added). *Accord State ex rel. Med. Assurance of West Virginia, Inc. v. Recht*, 213 W.Va. 457, 471, 583 S.E.2d 80, 94 (2003) (observing that "[i]f this Court were to create a new exception to [a body of law], it would do so in a syllabus point"). Such a practice is consistent with our constitutional duty to prepare a syllabus in every opinion that we issue. *See* W. Va. Const. art. VIII, § 4 ("[I]t shall be the duty of the court to prepare a syllabus of the points adjudicated in each case in which an opinion is written and in which a majority of the justices thereof concurred, which shall be prefixed to the published report of the case."). The adoption of a new syllabus point correspondingly presupposes that the subject case also presents a new factual predicate that the Court has not previously had occasion to consider and that the new syllabus point is necessary

to explain how the law applies to the fact pattern then before the Court.

The syllabus point adopted in the instant case, however, does not state a new point of law based upon a new set of facts that the Court has not previously considered. Rather, the facts of the instant appeal are directly on point with those already considered and addressed by this Court's prior opinion in the *Meadows* case: what happens to an employee's accrued sick leave upon his/her separation from employment when the employer has a defined policy? Nevertheless, the "new" syllabus point adopted by the majority of the Court in the case *sub judice* seems to pertain to cases in which an employer does not have a defined policy. This syllabus point would be perfectly acceptable in a case with a factual predicate to support its adoption. However, the facts contemplated by the majority's "new" syllabus point *are not* the facts presented by the instant proceeding! In this case, both a jury and the majority opinion have concluded that the employer herein *had* a defined policy governing the treatment of sick leave upon an employee's departure from employment. Specifically, said policy provides that

> [w]hen the services of an employee have been terminated, all sick leave credited shall be cancelled as of the last working day with the department. However, accumulated sick leave may be reinstated if a permanent employee is rehired by the Employer within a period of six (6) months from the date of separation.[1]

(Footnote added).

In light of the existence of such an employment policy, the majority simply should have applied *Meadows* to the facts of the case *sub judice* because *Meadows* specifically provides guidance for cases in which an employer has a defined policy in place. Since the facts of the case *sub judice* do not differ from those already addressed by *Meadows* and are not precisely as they are portrayed by the major-

1. The employer's policy also addressed sick leave benefits, generally, as well as the treatment of an employee's accrued sick leave upon his/her retirement:

> Sick leave eligibility is granted each year to be used for bona fide personal illness absences during that year or as hereinafter set forth for

maternity. Employees accrue sick leave at the rate of one and one-half days per month. The carryover of the sick leave time for bona fide personal illness absences is limited to 30 days; provided, however, for retirement purposes there is unlimited carryover of sick leave time.

ity's "new" syllabus point herein, the Court's "new" syllabus point is not necessary. Moreover, the majority's "new" syllabus point is somewhat misleading insofar as the factual predicate that it portrays is not an accurate depiction of the facts upon which the Court's decision is based.

2. *Stare decisis.* The majority's adoption of its "new" syllabus point herein also is improper on a more fundamental level because it ignores the longstanding doctrine of *stare decisis* with no explanation for its marked departure from our established precedent in *Meadows.* "Stare decisis is the policy of the court to stand by precedent." *Mayhew v. Mayhew,* 205 W.Va. 490, 499, 519 S.E.2d 188, 197 (1999) (internal quotations and citation omitted). In this regard, we have observed that

> [a] judicial precedent attaches ... a specific legal consequence to a detailed set of facts in an adjudged case or judicial decision, which is then considered as furnishing the rule for the determination of a subsequent case involving identical or similar material facts and arising in the same court or a lower court in the judicial hierarchy.

*Banker v. Banker,* 196 W.Va. 535, 546 n. 13, 474 S.E.2d 465, 476 n. 13 (1996) (internal quotations and citation omitted). Moreover,

> [s ]*tare decisis* ... is a matter of judicial policy.... It is a policy which promotes certainty, stability and uniformity in the law. It should be deviated from only when urgent reason requires deviation.... In the rare case when it clearly is apparent that an error has been made or that the application of an outmoded rule, due to changing conditions, results in injustice, deviation from that policy is warranted.

*Woodrum v. Johnson,* 210 W.Va. 762, 766 n. 8, 559 S.E.2d 908, 912 n. 8 (2001) (internal quotations and citations omitted). *Accord* Syl. pt. 2, *Dailey v. Bechtel Corp.,* 157 W.Va. 1023, 207 S.E.2d 169 (1974) ("An appellate court should not overrule a previous decision recently rendered without evidence of changing conditions or serious judicial error in interpretation sufficient to compel deviation from the basic policy of the doctrine of stare decisis, which is to promote certainty, stability, and uniformity in the law."). *Cf.* Syl. pt. 13, *Long v. City of Weirton,* 158 W.Va. 741, 214 S.E.2d 832 (1975) ("The rule of *stare decisis* does not apply where the former decisions have misinterpreted or misapplied a rule or principle of law."), *superseded by statute on other grounds as stated in Pritchard v. Arvon,* 186 W.Va. 445, 413 S.E.2d 100 (1991).

The parties in the case *sub judice* have asked the Court to determine whether the plaintiff former employees are entitled to payment for their accrued sick leave when the employer terminated their employment. To resolve this controversy, our prior holdings in *Meadows* direct that this Court must review the employment policy that governs the employees' employment. The facts of *Meadows* are nearly identical to those at issue in the instant proceeding, and the legal conclusions of *Meadows* remain good law that have not been overruled or abrogated since their adoption. As such, *Meadows* provides clear guidance for cases involving an employment policy addressing the treatment of an employee's fringe benefits upon his/her departure from employment. Adherence to our *Meadows* decision promotes the aims of *stare decisis* to provide clarity and to afford certainty in the operation of the law and its application to a given set of facts. Absent a compelling justification for departing from this Court's established precedent in *Meadows, stare decisis* demands that the majority follows its prior holdings. The majority's refusal to follow *Meadows* and its corresponding adoption of a "new" syllabus point in this opinion amount to a flagrant disregard of this established principle of judicial comportment.

### B. The Jury Properly Determined That the Employees Did Not Know About the Employer's Policy

Pursuant to Syllabus point 6 of *Meadows,* once it has been determined that an employer has a fringe benefits policy in place to determine whether unpaid benefits will be paid to an employee upon his/her separation from employment, the next inquiry is whether such policy was "express and specific" so as to adequately inform the subject employees about the policy's terms:

Terms of employment concerning the payment of unused fringe benefits to employees must be *express and specific* so that employees understand the amount of unused fringe benefit pay, if any, owed to them upon separation from employment. Accordingly, this Court will construe any ambiguity in the terms of employment in favor of employees.

Syl. pt. 6, *Meadows,* 207 W.Va. 203, 530 S.E.2d 676 (emphasis added). As noted previously, both the jury and the majority of this Court have found that the employer in this case had a defined policy regarding the treatment of accrued sick leave upon an employee's departure from employment. The issue that remained to be resolved in this case, then, was whether the employer's policy was "express and specific" so that the employees knew of its terms and application to their employment. The parties disputed whether the policy satisfied these criteria and even whether the employer had informed its employees about this policy. These inquiries thus constituted questions of fact that should have been, and properly were, submitted to the jury for its consideration and decision. The jury determined that the plaintiff former employees "[d]id [not] ... know of any such policy, either written or unwritten, regarding what happened to sick leave benefits upon the termination of their employment"; rendered its verdict in favor of the former employees; and allowed the case to proceed to the trial judge for entry of an award of damages to the employees. The majority of the Court, however, has concluded, instead, that the plaintiff former employees are not entitled to the relief that they seek in this case. By reversing the lower court's entry of judgment in favor of the employees, the majority has refused to give credence to the jury's verdict on this point when there is absolutely no indication that either the evidence or the basis for the jury's reasoning was flawed, tainted, biased, or otherwise rendered in error.

We long have held that the jury serves as the finder of fact, meaning that the function of the jury is to resolve factual disputes in the evidence presented to it for its consideration.

"It is the peculiar and exclusive province of a jury to weigh the evidence and to resolve questions of fact when the testimony of witnesses regarding them is conflicting and the finding of the jury upon such facts will not ordinarily be disturbed." Syllabus point 2, *Skeen v. C & G Corp.,* 155 W.Va. 547, 185 S.E.2d 493 (1971).

Syl. pt. 12, *Peters v. Rivers Edge Mining, Inc.,* 224 W.Va. 160, 680 S.E.2d 791 (2009). *Accord* Syl. pt. 3, *Long v. City of Weirton,* 158 W.Va. 741, 214 S.E.2d 832 ("It is the peculiar and exclusive province of the jury to weigh the evidence and to resolve questions of fact when the testimony is conflicting."). *See also Stevenson v. Independence Coal Co., Inc.,* 227 W.Va. 368, 371, 709 S.E.2d 723, 726 (2011) (per curiam) ("It is not our job to weigh the evidence ... or to disregard stories that seem hard to believe. Those tasks are for the jury." (internal quotations and citation omitted)); *Pauley v. Bays,* 200 W.Va. 459, 464, 490 S.E.2d 61, 66 (1997) (per curiam) (observing that "the function of the jury is to weigh the evidence with which it is presented and to arrive at a conclusion regarding damages and liability"); *Nesbitt v. Flaccus,* 149 W.Va. 65, 77, 138 S.E.2d 859, 867 (1964) ("It is a general rule of law that it is the duty of the jury to take the law from the court and to apply that law to the facts as it finds them from the evidence."). Therefore, once the factual dispute regarding the specificity of the employer's policy and the employees' knowledge thereof was raised during the underlying trial of this case, the resolution of this dispute rested with the jury.

In this case, however, the majority has usurped the jury's essential role as finder of fact by substituting its own assessment of the evidence for the jury's properly rendered findings of fact. Such a practice is a perversion of the judicial process that entrusts juries with the resolution of factual disputes, and from this decision of the majority, I emphatically dissent.

### C. The Trial Court Miscalculated the Employees' Damages

While I dissent from the majority's holding creating a "new" syllabus point when the existing points of law from our *Meadows*

opinion adequately address the legal issues before the Court and further disagree with the majority's substitution of its own judgment of the facts for that of the jury, I nevertheless concur in the majority's decision to reverse and remand this case insofar as further proceedings are needed in this matter. In this regard, the trial court's order should be reversed to the extent that it erred in its calculation of the amount of damages awarded to the plaintiff former employees. In calculating the employees' damages, the trial court permitted each employee to receive payment for every day of accrued sick leave that he/she had accumulated but had not used as of the date of that employee's termination. This method of calculating damages was wrong because it is contrary to the employer's policy governing the terms of the employees' employment.

As noted previously, the plaintiff former employees' employment was governed by the employer's policy defining the various terms of employment. Pursuant to this policy, employees may carry over no more than thirty days of sick leave pay: "[t]he carryover of the sick leave time for bona fide personal illness absences is limited to 30 days[.]" Given this clear limitation on the carry-over accumulation of sick leave days, it would appear that an employee would have at his/her disposal no more than thirty days of sick leave at any given point in time. Despite the limited accumulation of sick leave time permitted by the employer's stated policy, the trial court nevertheless permitted each employee to recover damages for *every* day of sick leave he/she had accrued since the beginning of his/her employment even though the amount of sick leave that can be carried over is limited to thirty days. The trial court's ruling in this regard was wrong and contrary to this Court's holdings in *Meadows,* 207 W.Va. 203, 530 S.E.2d 676, governing the interpretation of employment terms pertaining to fringe benefits. Accordingly, the trial court's order calculating damages in this fashion should be reversed, and this case should be remanded for the entry of a new damages order to correct this error.

For the foregoing reasons, I respectfully concur, in part, and dissent, in part, from the majority's opinion in this case.